**Mrs. Joe M. SHIVERS et vir, Appellants,**

v.

**GOOD SHEPHERD HOSPITAL, INC.,
Appellee.**

**No. 337.**

Court of Civil Appeals of Texas.

Tyler.

March 21, 1968.

Rehearing Denied April 18, 1968.

———◆———

Jack N. Price, Longview, for appellants.

Otto A. Ritter, Longview, for appellee.

SELLERS, Justice.

Mrs. Joe M. Shivers and her husband brought this suit to recover for personal injuries to Mrs. Shivers against the defendants, American Hospital Supply Corporation, McGaw Laboratories, Inc., and Good Shepherd Hospital, Inc. The cause of action against the defendants, American Hospital Supply Corporation and McGaw Laboratories, Inc., is as follows:

"II.

"On or about November 10, 1965, Mrs. Joe M. Shivers was hospitalized at the Good Shepherd Hospital in Longview, Texas, for treatment of flebitis. During the course of such treatment, she was administered an anti-coagulant intravenously. She was administered a substance known as dextran, sold and distributed to the hospital by McGaw Laboratories, Inc., a wholly owned subsidiary of the American Hospital Supply Corporation. The material was contaminated, and through bacteria directly entered the blood stream of the Plaintiff, Mrs. Joe M. Shivers, causing her to go into a state of extreme shock and causing her to remain at the point of death for approximately five (5) days. As a result, she was required to have constant care for a period of time, and because of the extreme bacterial reaction and the extreme state of shock to which she was subjected, her entire organic system was subjected to considerable stress and strain, and her general state of health has been permanently impaired as more particularly set forth hereafter.

"III.

"At the time and on the occasion in question, the Defendant, American Hospital Supply Corporation, and Defendant McGaw Laboratories, Inc., were negligent in the following respects:

"(1) In supplying to the hospital for use on patients intravenously a material bacterially contaminated.

"(2) In failing to properly inspect the batch or lot of material of which that given to Mrs. Shivers was a part to see that it would not be properly free from bacteria.

"(3) In failing to properly package the material to prevent contamination after the material was sold and delivered, and prior to its use.

"(4) In failing to give proper instructions to those who administered the drug with respect to testing and insuring against possible contamination.

"Each of the foregoing acts of negligence was a proximate cause of the injuries and damages to Mrs. Shivers.

"IV.

"In the alternative, the Plaintiff would show that by virtue of the sale and distribution of the material for intravenous use, the Defendant American Hospital Supply Corporation and Defendant McGaw Laboratories, Inc. expressly and impliedly warranted that it would be fit for the use or purpose intended, that the material was not in fact fit for such use, but was bacterially contaminated, and therefore the Defendant American Hospital Supply Corporation and Defendant McGaw Laboratories, Inc. are liable to the Plaintiff Mrs. Joe M. Shivers for the loss and damages she has suffered by virtue of the breach of express and implied warranty of fitness or suitability for use."

Then follows the cause of action as alleged against the defendant, Good Shepherd Hospital:

"V.

"At the time and on the occasion in question, the Good Shepherd Hospital was guilty of each of the following acts of negligence, each of which was a proximate cause of the loss, damages and injuries to Mrs. Shivers:

"(1) In supplying to Mrs. Shivers for intravenous use a drug and substance bacterially contaminated.

"(2) In failing to properly inspect the material to see that it was not contaminated prior to its administration to Mrs. Shivers.

"(3) In failing to properly store and to handle the drug prior to its administration to insure that it would not be contaminated.

"VI.

"In the alternative, with respect to the Good Shepherd Hospital, the Plaintiff would show that when the hospital administered the drug to her, the hospital expressly and impliedly warranted that it was fit for such use, whereas in fact it was not fit for such use but was bacterially contaminated, and therefore the Defendant has breached that express and/or implied warranty of suitability or fitness for the use intended, and is liable to the Plaintiff for the damages she has suffered by virtue thereof."

The defendant, Good Shepherd Hospital, filed a Plea in Abatement and asked the Court to dismiss the suit against it for the reason that it was a charitable hospital and, as such, was immune from liability for the negligent acts of its agents, servants or employees. The Court, after hearing on this motion to dismiss, granted the same and dismissed the defendant from the case. To this action, the plaintiffs excepted and have duly prosecuted this appeal.

Appellants' first assignment of error is as follows:

"THE TRIAL COURT ERRED IN ORDERING THE DISMISSAL OF THE GOOD SHEPHERD HOSPITAL, INC. AS A PARTY DEFENDANT, BECAUSE THE HOSPITAL IS NOT IMMUNE FROM LIABILITY FOR BREACH OF WARRANTY OF SUITABILITY OF DRUGS ADMINISTERED TO PATIENTS, LIABILITY RESTING ON THE LEGAL CONCEPTS OF BREACH OF CONTRACTUAL OBLIGATION AND STRICT LIABILITY."

This appellee is admittedly a charitable hospital and as such is immune from the negligent acts of its agents, servants and employees. The three acts of negligence alleged against this appellee by their nature

are acts of an agent, servant, or employee of the hospital and come within the exemption extended to charitable hospitals. However, appellants in their first assignment say that the hospital is not immune from liability for breach of warranty of suitability of drugs administered to patients, liability resting on the legal concepts of breach of contractual obligation and strict liability.

We are aware of the rule of strict liability as applied to the manufacture of food products sold to the public, as announced by the Supreme Court in the case of Jacob E. Decker & Sons, Inc. v. Capps et al., 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479:

"After having considered the matter most carefully, we have reached the conclusion that the manufacturer is liable for the injuries sustained by the consumers of the products in question. We think the manufacturer is liable in such a case under an implied warranty imposed by operation of law as a matter of public policy. We recognize that the authorities are by no means uniform, but we believe the better reasoning supports the rule which holds the manufacturer liable. Liability in such case is not based on negligence, nor on a breach of the usual implied contractual warranty, but on the broad principle of the public policy to protect human health and life. It is a well-known fact that articles of food are manufactured and placed in the channels of commerce, with the intention that they shall pass from hand to hand until they are finally used by some remote consumer. It is usually impracticable, if not impossible, for the ultimate consumer to analyze the food and ascertain whether or not it is suitable for human consumption. Since it has been packed and placed on the market as a food for human consumption, and marked as such, the purchaser usually eats it or causes it to be served to his family without the precaution of having it analyzed by a technician to ascertain whether or not it is suitable for human consumption. In fact, in most instances the only satisfactory examination that could be made would be only at the time and place of the processing of the food. It seems to be the rule that where food products sold for human consumption are unfit for that purpose, there is such an utter failure of the purpose for which the food is sold, and the consequences of eating unsound food are so disastrous to human health and life, that the law imposes a warranty of purity in favor of the ultimate consumer as a matter of public policy."

The above rule was announced by the Supreme Court in 1942 for the first time. This rule by the Supreme Court was extended by that Court in the case of McKisson v. Sales Affiliates, Inc., Tex., 416 S.W.2d 787, to apply to defective products which cause physical harm to persons:

"Section 402A of the American Law Institute's Restatement of the Law of Torts (2d Ed.), hereinafter referred to as the Torts Restatement, reads as follows:

'(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

'(a) the seller is engaged in the business of selling such a product, and

'(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

'(2) The rule stated in Subsection (1) applies although

'(a) the seller has exercised all possible care in the preparation and sale of his product, and

'(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.'

"Insofar as foodstuffs for human consumption are concerned, this section states the law as followed in Texas. Jacob E. Decker & Sons v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479 (1942). We are further of the opinion that as a logical proposition, the rule stated in *Decker* should be held applicable to defective products which cause physical harm to persons. As pointed out by the concurring justice in the Court of Civil Appeals, no sound distinction can be drawn between the use of an eye-wash solution that impairs or destroys vision and a foodstuff which causes illness. (408 S.W.2d 124, l. c. 128).

"In Comment (a) under Section 402A of the Torts Restatement, it is said:

'This Section states a special rule applicable to sellers of products. The rule is one of strict liability, making the seller subject to liability to the user or consumer even though he has exercised all possible care in the preparation and sale of the product. * * *'"

It will be noted that appellants in their petition do not charge this appellee with being the manufacturer or distributor of the dextran product, but the other defendants are charged with supplying the same to the appellee for use on patients intravenously.

It will also be noted that the two cases above referred to apply the rule of strict liability and implied warranty to the manufacturer and distributor of a product. If this is to be the extent of the rule, then the appellee will not be liable under the strict liability and implied warranty rule applied in those cases.

In the recent case of Barbee v. Rogers, decided February 28, 1968, Tex., 425 S.W.2d 342, Justice Steakley called the rule in the cases above applied "tortious" and not "contractual" and refused to extend the same beyond the manufacturer of the product. Believing that the rule cannot be applied to the facts under consideration, appellants' point number one is overruled.

Appellants allege that the trial court erred because the Supreme Court has given notice that the limited doctrine of charitable immunity from tort liability is to be abolished.

This same legal question was before this Court in the case of Slocum v. Galveston County, Texas, Tex.Civ.App., 410 S.W.2d 487, and this Court there held:

"This Court finds itself in the same position of the trial court in that it is our constitutional duty to follow the law as announced by the Supreme Court where the identical question has been decided. 15 T.J.2d, Section 137, page 597 states the rule: 'Thus, it is the constitutional duty of the Court of Civil Appeals to follow decisions of the Supreme Court in cases that are squarely in point.'"

The judgment of the trial court is affirmed.