RANCHO CAMILLE, S.A., et al., Appellants,

v.

Dr. Jerry Robert BEACHUM et ux., Appellees.

No. 6126.

Court of Civil Appeals of Texas, Waco.

March 13, 1980.

Rehearing Denied April 3, 1980.

Richard D. Pullman, James M. Schendle, Pullman & Schendle, Dallas, for appellants.

Warwick H. Jenkins, Brenda Jeffers Damuth, Jenkins & Jenkins, Waxahachie, for appellees.

HALL, Justice.

Plaintiffs-appellees Dr. Jerry Beachum and wife Ann Berset Beachum owned approximately 430 acres of land located in Bosque County, Texas. On February 11, 1975, plaintiffs obtained a loan of $134,-000.00 from the Federal Land Bank of Houston to pay off an existing indebtedness on the 430 acres. They executed their promissory note to the Land Bank in the principal sum of the loan. The note was payable in installments, the last installment being due on September 1, 2004. Plaintiffs also executed a deed of trust on the 430 acres in favor of the Land Bank to secure payment of the note. Among other conditions, plaintiffs were required under the deed of trust to pay the note installments when due, to keep insurance on the improvements on the land against loss by fire and storm payable to the Land Bank to the extent of its interest, and to pay all taxes when due.

By general warranty deed dated October 26, 1976, and a correction general warranty deed dated April 14, 1977 (correcting only the omission of a mineral reservation in the first deed), plaintiffs conveyed the 430 acres to defendant-appellant Rancho Camille, S.A. It was recited in the deed that Rancho Camille is a Mexican Corporation having its principal place of business in El Limon, Tamaulipas, Republic of Mexico. The consideration stated in both the original and the correction deeds for the conveyance was as follows:

"The sum of Ten Dollars and other valuable consideration . . . and for the further consideration as set forth in Agreement dated October 15, 1976, by and between Jerry Robert Beachum and wife, Ann Berset Beachum, Josefina Juarez de Rodebaugh, Fruticola La Isla, S.A., and Rancho Camille, S.A., to which reference is hereby made for all purposes, and for the further consideration that Grantee hereby assumes and promises to pay, according to the terms thereof, all principal and interest now remaining unpaid on [the $134,000.00 Land Bank note] secured by a Deed of Trust of even date therewith . . . and Grantee hereby assumes and promises to keep and perform all of the covenants and obligations of the Grantors named in said Deed of Trust."

Additionally, in both the original and correction deeds, plaintiffs expressly retained superior title to the property conveyed and a vendor's lien against the property until the $134,000.00 note was fully paid.

The original deed from plaintiffs was recorded in the deed records of Bosque County, Texas, on March 4, 1977; and the correction deed was recorded there on April 14, 1977.

On February 7, 1978, a lawsuit was filed in the United States District Court for the Northern District of Texas, Dallas Division, by the plaintiffs in our case against Rancho Camille, S.A., Fruticola La Isla, S.A., Donald G. Rodebaugh, Josefina Juarez Rodebaugh, and John W. Swigart. Among other reliefs sought by plaintiffs in the Federal Court case was the rescission of the conveyance of the 430 acres by plaintiffs to Rancho Camille. In connection with the Federal Court suit plaintiffs caused a notice of lis pendens to be filed of record in Bosque County on February 10, 1978, giving notice that the 430 acres, described by metes and bounds, were affected by the Federal Court suit.

Thereafter, on June 26, 1978, the following instruments purporting to convey title to the 430 acres were filed and recorded in the deed records of Bosque County. All were executed on May 27, 1978.

1. A general warranty deed from Rancho Camille, S.A., to Leisure Multihousing Corporation.

2. A special warranty deed from Josefina Juarez de Rodebaugh to Leisure Multihousing Corporation.

3. A special warranty deed from Fruticola La Isla, S.A., to Leisure Multihousing Corporation.

Under the terms of the deeds, the grantee Leisure Multihousing Corporation received the property "subject to but not assuming" the unpaid balance on the $134,000.00 Land Bank note.

Plaintiffs filed the instant suit on December 20, 1978, against defendants-appellants Rancho Camille, S.A., Fruticola La Isla, S.A., Josefina Juarez de Rodebaugh, and Leisure Multihousing Corporation. Plaintiffs pleaded their original and correction deeds to Rancho Camille conveying the 430 acres; their retention of vendor's lien and superior title; Rancho Camille's assumption of payment of the Land Bank note and its assumption of and agreement to perform the covenants and terms of the deed of trust securing the note as consideration for the conveyance; and that Rancho Camille had failed to meet its obligations under those instruments in the following particulars: (1) That the annual principal and interest installment in the amount of $11,-647.00 on the note due on September 1, 1978, had not been paid by Rancho Camille, and that the installment was past due and unpaid; (2) that County and State taxes in the amounts of $75.90 for the tax year 1977 and $76.76 for the tax year 1978 had not been paid and remained delinquent; (3) that taxes assessed by the Walnut Springs Independent School District in the amounts of $808.69 (including penalty and interest) for the tax year 1977 and $696.20 for the tax year 1978 had not been paid and remained delinquent; and (4) that the insurance policy insuring the improvements on the property against loss by fire and storm expired on December 1, 1978, and had not been renewed by Rancho Camille. Plaintiffs prayed for rescission and cancellation

of their conveyance and deeds to Rancho Camille and for title and possession of the property. Alternatively, they prayed for foreclosure of their vendor's lien and for possession of the property.

Plaintiffs' petition also contained these pleadings in paragraph 6 thereof:

"Plaintiffs would show the court that on February 7, 1978, a lawsuit styled Dr. Jerry Robert Beachum and Ann Berset Beachum vs. Rancho Camille, S.A., Fruticola La Isla, S.A., Donald G. Rodebaugh, Josefina Juarez Rodebaugh, and John W. Swigart was filed in the United States District Court for the Northern District of Texas, Dallas Division, and is presently pending. Said suit is based on alleged violations of the Texas Securities Act, the Securities Act of 1933, the Securities and Exchange Act of 1934, Rule 10b–5, and Art. 27.01, Tex.Bus. & Comm.C. Plaintiffs herein, in the Federal Court suit, seek to rescind all of the transactions between themselves and the above-named Defendants, including the conveyance of the 430.229 acres in Bosque County, which forms the basis of this lawsuit."

That paragraph was followed by two others pleading the lis pendens notice filed in Bosque County in connection with the Federal Court suit, and the subsequent conveyances of the 430 acres to Defendant Leisure Multihousing Corporation by defendants Rancho Camille, Fruticola, and Josefina Rodebaugh.

Defendants first filed pleas in abatement asserting as grounds therefor (insofar as relevant to this appeal) the admissions set forth in plaintiffs' petition relating to the pending case in Federal Court. Defendants alleged that the subject matter, the issues, the relief sought by plaintiffs (rescission of their conveyance to Rancho Camille) and the parties, excepting defendant Leisure Multihousing Corporation, were the same in the Federal suit and the instant case, and that a trial and judgment in the former action would be a final determination of the issues presented in this action.

Subject to their pleas in abatement, defendants answered with a general denial and the following pertinent special pleas: (1) that the taxes and insurance had been paid and accordingly no cause for foreclosure by plaintiffs existed thereby; (2) that the note payment due on September 1, 1978, to the Land Bank of Houston had been paid by the Federal Land Bank Association of Waco "and accordingly Defendants have kept the covenants and obligations of Plaintiff as set forth in the Deed of Trust"; (3) that plaintiffs should be estopped from foreclosing their vendor's lien because, through their agents and attorneys, they improperly persuaded the Federal Land Bank Association of Waco to refuse to accept full payment of the note by cashier's check from defendant Leisure Multihousing Corporation; and (4) plaintiffs should be estopped from foreclosing their lien because either individually or through their agent they "have taken improper steps to tie up certain property in Mexico which was conveyed to Plaintiffs by certain of the Defendants herein in exchange for the property which is the subject matter of this suit," and "the effect of Plaintiffs' improper actions has been to place said Defendants in a financial situation such that they are for all practical purposes unable to maintain certain of their obligations and covenants to Plaintiffs . . . which Plaintiffs have made difficult or impossible to so do."

Defendants' pleas in abatement were heard by the court on February 21, 1979, and denied by written order dated March 5, 1979. The order recites that evidence was heard on the pleas.

The case was tried on its merits by the court without a jury on March 30, 1979. We shall notice later in this opinion certain offers of payment made by defendants during the course of the trial which they now assert were tenders by them of the full amounts they owed under the proof. After the hearing, judgment was rendered that plaintiffs recover title to and possession of the 430 acres from defendants.

Defendants base their appeal on these three points of error:

"Point 1. The error of the trial court in denying Defendants' pleas in abatement.

"Point 2. The error of the trial court in granting Plaintiffs a rescission of the conveyance to Defendants under circumstances that would render said rescission inequitable.

"Point 3. The failure of the trial court to accept Defendants' tender of the amounts owed."

We overrule those complaints, and we affirm the judgment.

### The Pleas In Abatement

■■■ Defendants have not brought forward a statement of the facts adduced on the hearing of the pleas in abatement. Without the statement of facts, it must be presumed on appeal that sufficient evidence was introduced to support the court's implied findings and order overruling the pleas. *Ehrhardt v. Ehrhardt*, 368 S.W.2d 37, 38 (Tex.Civ.App.—Waco 1963, writ ref'd). Nevertheless, defendants assert that the admissions by plaintiffs set forth in paragraph 6 of plaintiffs' petition conclusively establish defendants' right to abatement of this suit. We disagree. To support the abatement of a subsequent suit because of the pendency of a prior suit it is generally necessary that the proof establish that the two suits involve the same cause of action, concern the same subject matter, involve the same issues, and seek the same relief. *Rowland v. Prappas*, 491 S.W.2d 179, 182 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n. r. e.); *Nowell v. Nowell*, 408 S.W.2d 550, 553 (Tex.Civ.App.—Dallas 1966, writ dism.); 1 Tex.Jur.2d 56–60, Abatement And Revival §§ 34, 35. Although plaintiffs' sought rescission of the conveyance in question in both the Federal Court case and this case, and though a judgment *granting* plaintiffs that relief in either case would obviate the trial of.that question in the other, the grounds asserted by plaintiffs for the rescission in the cases were *separate and distinct*, and a judgment *denying* plaintiffs the relief in either case would not prevent trial of the question on other grounds asserted therefor in the other case. It is clear therefore that the two suits do not involve the same cause of action and the same issues. It is equally clear that defendants' argument that the suits may result in conflicting judgments is without merit.

### The Equities In The Case

In response to defendants' request for findings of fact and conclusions of law, the court made and filed the following findings in support of its conclusions for rescission and the judgment:

1.

"On or about the 11th day of February, 1975, Plaintiffs executed and delivered to George W. Cunningham, a Deed of Trust, conveying the following described realty located in the County of Bosque, State of Texas, in trust, to the Federal Land Bank of Houston: [the 430 acres described by metes and bounds].

2.

"The above referenced conveyance was made to secure the payment of one certain promissory note in the original amount of $134,000.00, executed by Plaintiffs herein, payable to the order of the Federal Land Bank of Houston.

3.

"The above referenced note provided for annual installment payments of principal and interest.

4.

"By the terms of the Deed of Trust referred to in Finding of Fact No. 1, Plaintiffs promised to keep and perform the covenants and obligations outlined therein, including, but not limited to, the following:

a. To pay all installments due on that one certain promissory note·to the Federal Land Bank of Houston.

b. To insure and keep insured all buildings located on said land against loss or damage by fire and storm.

c. To pay when due all ad valorem taxes assessed against the property.

5.

"On or about October 29, 1976, Plaintiffs conveyed the above described realty to Defendant Rancho Camille, S.A.

6.

"As partial consideration for the above referenced conveyance, Defendant Rancho Camille, S.A., among other things, agreed to assume and pay when due all indebtedness owing on that one certain promissory note referred to in Finding of Fact No. 2, and keep and perform the covenants and obligations outlined in the Deed of Trust referred to in Finding of Fact No. 1, including, among other things:

a. Pay all installments due on that one certain promissory note to the Federal Land Bank of Houston.

b. Pay when due all ad valorem taxes assessed against said property.

c. Pay when due all hazard insurance premiums on the improvements on said property.

7.

"Plaintiffs specifically retained the Vendor's Lien as well as the Superior Title in and to the subject property until the note and indebtedness assumed by Defendant Rancho Camille, S.A. had been paid and all covenants and obligations outlined in the Deed of Trust referred to in Finding of Fact No. 1 had been performed.

8.

"On the first day of September, 1978, an annual installment payment of principal and interest became due on the note to the Federal Land Bank of Houston.

9.

"Neither Defendant Rancho Camille, S.A., nor any individual or entity acting in its behalf, paid the installment payment referred to in Finding of Fact No. 8 and the same remains past due and unpaid.

10.

"Neither Defendant Rancho Camille, S.A., nor any individual or entity acting in its behalf, paid the county and state ad valorem taxes assessed against the subject property. for the year 1977 and the same remain past due and unpaid.

11.

"Neither Defendant Rancho Camille, S.A., nor any individual or entity acting in its behalf, paid the ad valorem taxes assessed against the subject property for the years 1977 and 1978 by the Walnut Independent School District and the same remains past due and unpaid.

12.

"On December 31, 1978, the policy insuring the improvements on the subject property from loss or damage by fire and storm expired because of the failure of Defendant Rancho Camille, S.A. to make payment of the renewal premiums therefor, and such Defendant has not since made such payment nor has it provided any other policy of insurance, as required by the Deed of Trust referred to in Finding of Fact No. 1.

13.

"On February 7, 1978, a lawsuit styled Dr. Jerry Robert Beachum and Ann Berset Beachum vs. Rancho Camille, S.A., Fruticola La Isla, S.A., Donald G. Rodebaugh, Josefina Juarez De Rodebaugh, and John W. Swigart was filed in the United States District Court for the Northern District of Texas, Dallas Division.

14.

"On February 7, 1978, Plaintiffs executed a Notice of Lis Pendens which was filed for record on February 10, 1978, in Bosque County, Texas.

15.

"On or about May 27, 1978, Defendant Rancho Camille, S.A. conveyed the subject property by Warranty Deed to Defendant Leisure Multihousing Corporation.

16.

"On or about May 27, 1978, Defendant Fruticola La Isla, S.A., and Defendant Josefina Juarez De Rodebaugh each conveyed by Special Warranty Deed the subject property to Defendant Leisure Multihousing Corporation.

17.

"Neither the Federal Land Bank Association of Waco nor the Federal Land Bank of Houston have commenced or threatened

**638**

foreclosure proceedings on the subject property.

18.

"Defendants conceded, in open court, the existence of the lawsuit styled Dr. Jerry Robert Beachum and Ann Berset Beachum vs. Rancho Camille, S.A., Fruticola La Isla, S.A., Donald G. Rodebaugh, Josefina Juarez De Rodebaugh, and John W. Swigart; that same was based on alleged violations of the Texas Securities Act, the Securities Act of 1933, the Securities and Exchange Act of 1934, Rule 10b–5 promulgated thereunder, and Article 27.01, Tex.Bus. & Comm.Code.

19.

"Neither Plaintiffs herein, nor any individual or entity acting in their behalf, acted in concert with the Federal Land Bank Association of Waco to prevent Defendants from complying with the terms of the promissory note payable to the Federal Land Bank of Houston and referred to in Finding of Fact No. 2.

20.

"Neither Plaintiffs herein, nor anyone acting in their behalf, did anything to prevent Defendants herein from complying with the terms, conditions, obligations and covenants of the Deed of Trust and referred to in Finding of Fact No. 1, or of the note referred to in Finding of Fact No. 2.

21.

"Neither Defendant Leisure Multihousing Corporation, nor any other person or entity acting in its behalf, tendered a cashier's check in the amount necessary to satisfy in full the unpaid balance of the note referred to in Finding of Fact No. 1."

The appellate record also contains a complete statement of facts of the trial on the merits.

Defendants did not request any additional findings, and they have not challenged by point of error any of the findings made by the court. In fact, the findings are not even mentioned in defendants' original and reply briefs. Rather, their briefs are devoted to recitations and discussions of the record in the light most favorable to the contention in their second point of error that the rescission was "inequitable."

■ Findings of fact which are not challenged by proper assignment of error on appeal are binding on the parties and the reviewing court. *Zelios v. City of Dallas,* 568 S.W.2d 173, 175 (Tex.Civ.App.—Dallas 1978, writ ref'd n. r. e.); *Lovejoy v. Lillie,* 569 S.W.2d 501, 504 (Tex.Civ.App.—Tyler 1978, writ ref'd n. r. e.); *Bilek v. Tupa,* 549 S.W.2d 217, 220 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.); *Texas State Board of Pharmacy v. Gibson's Discount Center, Inc.,* 541 S.W.2d 884, 886 (Tex.Civ.App.—Austin 1976, writ ref'd n. r. e.); *Curtis v. National Cash Register Co.,* 429 S.W.2d 909, 911 (Tex.Civ.App.—Amarillo 1968, writ ref'd n. r. e.); *Zapata County v. Llanos,* 239 S.W.2d 699, 701 (Tex.Civ.App.—San Antonio 1951, writ ref'd n. r. e.); *Curry v. E. E. Stone Lumber Co.,* 218 S.W.2d 293, 294 (Tex.Civ.App.—El Paso 1949, writ ref'd n. r. e.).

■ The undisputed findings in our case resolved the controlling and material issues made by the parties' pleadings on the question of rescission. The remaining question is whether the findings support the judgment. See, *Davies v. Meyer,* 573 S.W.2d 873, 875 (Tex.Civ.App.—Fort Worth 1978, no writ). We hold they do.

*The Tenders*

■■ The trial court did not make any express findings of fact relating to defendants' asserted tenders made during the trial, but the court did file conclusions of law that the tenders were not "valid tenders." Therefore, we must presume that all necessary fact findings were made by the court in support of the conclusions and the judgment. *Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609, 613 (1950); *Tubb v. Carter-Gragg Oil Company,* 443 S.W.2d 947, 948 (Tex.Civ.App.—Waco 1969, no writ). Furthermore, it is our duty to sustain the judgment of a trial court if it is correct on any theory of law applicable to the case. *Gulf Land Co. v. Atlantic Refining Co.,* 134 Tex. 59, 131 S.W.2d 73, 84 (1939).

We perceive two reasons under the record why defendants' purported tenders were properly rejected by the court: First, defendants did not tender payment of the court costs; and, second, defendants did not produce nor relinquish possession of necessary funds in connection with their tenders.

In connection with their suit, plaintiffs pleaded for recovery of the costs of court. When plaintiffs closed their primary proof defendants offered to pay only the taxes, asserting the evidence showed that the note installment and insurance had been paid. After all parties had closed, defendants offered to pay the taxes, the installment, and the insurance. It is undisputed in the record that defendants did not at anytime tender or offer to pay the court costs. Costs need not be tendered where tender is made before the commencement of the suit, but where tender is made after suit has commenced it must include the accrued court costs. *Dawson v. Falfurrias State Bank*, 181 S.W. 553, 554 (Tex.Civ.App.—San Antonio 1916, writ ref'd); *Kinzbach Tool Co. v. Corbett-Wallace Corporation*, 145 S.W.2d 235, 240 (Tex.Civ.App.—Galveston 1940), reversed on other grounds, 138 Tex. 565, 160 S.W.2d 509 (1942); 86 C.J.S. Tender § 8(b) p. 563. This is consonant with the rule that a tender is ordinarily an admission of the validity of the plaintiff's claim to the extent of the sum tendered. *State Fair of Texas v. Seay*, 98 S.W.2d 232, 234 (Tex.Civ.App.—Fort Worth 1936, writ dism.); 86 C.J.S. Tender § 51 p. 582.

The evidence shows without contradiction that the unpaid taxes totalled $1,608.30, and that the delinquent note payment and the insurance premium due totalled $13,777.17. Donald G. Rodebaugh, defendant Rancho Camille's manager, testified that on the day of trial he delivered $1,608.30 in cash to defendants' attorney for payment of the taxes. However, that sum in cash or otherwise was never produced in court. Rodebaugh also testified that he had delivered to defendants' attorney a cashier's check in the amount of $13,777.17 payable to the attorney "as Trustee." The cashier's check was produced in court by defendants. It was payable to "Richard Pullman, Trustee." Mr. Pullman was defendants' attorney at the trial. The cashier's check was a part of defendants' "offer of tender." However, the check was never endorsed by Pullman, and it remained payable as originally made throughout the proceeding. "A valid and legal tender of money consists of the actual production of the funds and offer to pay the debt involved. The tenderer must relinquish possession of it for a sufficient time and under such circumstances as to enable the person to whom it is tendered, without special effort on his part, to acquire its possession." *Baucum v. Great American Insurance Co. of New York* (Tex.1963) 370 S.W.2d 863, 866. Defendants did not meet those tests, and there are no circumstances in the record justifying their failure. The trial court made it quite clear to defendants before he finally ruled on their tenders that defendants had not yet relinquished possession of any funds.

In view of the foregoing, we need not reach questions raised in the record and briefed by the parties as to whether defendants' tenders were unconditional and timely.

Defendants' points are overruled. The judgment is affirmed.