PROVIDENCE HOSPITAL, Appellant,

v.

Goldie E. TRULY et vir, Appellees.

No. 6177.

Court of Civil Appeals of Texas, Waco.

Dec. 18, 1980.

Rehearing Denied Jan. 30, 1981.

C. A. Searcy Miller, Ray, Anderson, Shields, Trotti & Hemphill, P. C., Dallas, for appellant.

W. V. Dunnam, Jr., Dunnam, Dunnam, Horner & Meyer, Waco, for appellees.

HALL, Justice.

On May 14, 1975, appellee Mrs. Goldie E. Truly submitted to cataract surgery on her right eye by Dr. Stanley Hersh, an ophthalmologist selected by her, while she was a patient in appellant Providence Hospital for that purpose. The final act in the surgery was the injection into the eye of a fluid drug known as "Miochol." The injection was made by Dr. Hersh through the needle of a syringe inserted between sutures which had closed the surgical incision. The vial containing the Miochol was supplied to the surgery room by appellant from appellant's hospital pharmacy. In the surgery room the vial was sterilized by the "circulating nurse," who was an employee of appellant in charge of the surgery room, by placing the vial in a pan of liquid germicide known as "Bard-Parker solution" for approximately thirty minutes immediately prior to the

beginning of the operation. The primary ingredient in the Bard-Parker solution was the caustic formaldehyde. After the sterilization was completed, the circulating nurse removed the vial from the Bard-Parker solution and placed it in a pan of sterile water for rinsing. In turn, at the proper time, Dr. Hersh's nurse assistant then rinsed and dried the vial prior to withdrawing the Miochol into a syringe which was furnished by appellant for Dr. Hersh's use in making the injection.

The evidence in this case shows without contradiction that soon after the operation the vial in question was inadvertently discarded by appellant's employees, probably by janitors, and that the vial could not thereafter be found. Nevertheless, proof was adduced on the trial that the Miochol injected into Mrs. Truly's eye from the vial was contaminated with the Bard-Parker solution, and that this resulted in injury to the eye and required additional corrective surgery performed on the eye. Appellees Mrs. Truly and her husband filed this suit for their damages against Cooper Laboratories, Inc., the alleged manufacturer of the Miochol, and against appellant hospital. Appellees' basic premise was that the stopper on the bottle was loose when the bottle was placed in the Bard-Parker solution. They pleaded causal negligence against both defendants. Their negligence action against appellant was based upon the failure of appellant's circulating nurse to discover the contamination, and also upon the ground that the syringe which appellant provided to Dr. Hersh for the injection was "glazed" from extended prior use and thereby prevented discovery of the contamination by Dr. Hersh or his assistant before the injection. Appellees also pleaded an action against appellant under the Texas Deceptive Trade Practices—Consumer Protection Act (V.T.C.A., Bus. & C. § 17.41 et seq.) based upon breach of implied contractual warranty stemming from an alleged sale of the Miochol to appellees by appellant, and they sought treble damages and attorneys' fees provided under the Act in connection with that cause.

Appellant answered appellees' suit, and it also pleaded an action for full indemnity, or alternatively for contribution, against Cooper Laboratories, Inc., and against Warner-Lambert Pharmaceutical Company, alleging that those companies "were the manufacturers of the vial and Miochol in question."

Prior to the commencement of the trial, appellees entered into a settlement agreement with Cooper Laboratories and with the third-party defendant Warner-Lambert Pharmaceuticals, under which Cooper and Warner-Lambert each agreed to pay $17,-500.00 to appellees for a total settlement of $35,000.00. Appellees' suit against appellant, and appellant's third-party action against Cooper Laboratories and Warner-Lambert Pharmaceuticals, were then tried to a jury.

The case was submitted to the jury on special issues. However, no issues were submitted relating to appellant's third-party suit against Cooper and Warner-Lambert.

The jury failed to find that appellant was guilty of negligence, but the following findings were made in appellees' favor on the breach of warranty action:

Special Issue No. 1: At the time the bottle was placed into the tray of sterile water from the Bard-Parker solution by the circulating nurse, "said bottle of Miochol was not reasonably fit for the purpose intended."

Special Issue No. 2: The failure of the bottle of Miochol to be reasonably fit for the purpose intended was a producing cause of the injury to Mrs. Truly's eye.

Special Issue No. 3: The Miochol was contaminated at the time it was injected into Mrs. Truly's eye.

Special Issue No. 13: $15,000.00 would fairly and reasonably compensate plaintiffs for the injury to Mrs. Truly's eye.

Special Issues Nos. 14, 15, and 16: Reasonable attorneys' fees for plaintiffs' attorneys' services would be $6,000.00 through the trial court, $2,500.00 for an appeal to the Court of Civil Appeals, and an additional $2,000.00 for an appeal to the Texas Supreme Court.

Judgment was rendered on the verdict awarding appellees recovery on their deceptive trade practice action against appellant for their actual damages, trebled, and for attorneys' fees. The judgment also provided that appellant take nothing on its suit for contribution and indemnity against Cooper Laboratories and Warner-Lambert Pharmaceuticals. We shall notice the judgment in greater detail, later.

Appellees' deceptive trade practice action was particularly based upon the provisions of § 2.315 and certain parts of § 17.50 of the Texas Business and Commerce Code (V.T. C.A., Bus. & C.). § 2.315, a part of the Uniform Commercial Code as adopted in Texas, provides as follows:

"Where the seller [of goods] at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

§ 17.50 is a part of the Texas Deceptive Trade Practices—Consumer Protection Act. At the times pertinent to this lawsuit § 17.50(a)(2) provided that a consumer could base an action under the Act upon the breach of an express or implied warranty which was the producing cause of actual damages; and § 17.50(b)(1) provided that if the consumer prevailed in his action he was entitled to recover three times the amount of actual damages, court costs, and attorney's fees. § 17.44 provides that the Act "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty."

The record shows without contradiction that appellant hospital knew the particular purpose for which the Miochol was required in the surgical operation in question, and that appellees and Dr. Hersh were relying on appellant to select and furnish the Mio-

chol in a state suitable for injection into Mrs. Truly's eye. Appellant does not assert otherwise.

■ Appellant contends the evidence in the case is legally insufficient, or alternatively factually insufficient, to establish a "sale" of the Miochol to appellees by appellant within the provisions of § 2.103(a)(4) and § 2.106(a) of the Business and Commerce Code which provide, respectively, that a "seller" is "a person who sells or contracts to sell goods," and that "a 'sale' consists in the passing of title from the seller to the buyer for a price." We overrule these contentions. During the course of Dr. Hersh's cross examination by appellant's counsel, appellant introduced into evidence a statement of appellant's charges to appellees. The statement was handed to Dr. Hersh, and he was asked "There's no charge on there for Miochol, is there?" He answered, "I don't see anything labeled Miochol." Dr. Hersh's answer was correct; the statement does not contain any item labeled "Miochol." Nevertheless, there is an entry on the bill dated May 14, 1975, the day of Mrs. Truly's surgery, for "DRSG–EYE–PDHS7" with a corresponding charge of $2.40. The only evidence of any "eye drug" furnished to Mrs. Truly on the day of surgery was the evidence relating to the Miochol. The proof does show that the surgery was performed under local anesthesia and that the anesthetics used by Dr. Hersh for that purpose were furnished by appellant, but appellant's statement of charges contains a separate entry for "ANESTHESIA" made on the day of surgery with a charge therefor of $7.50. Additionally, Mr. Truly testified that he expected appellant to furnish whatever drugs and supplies were necessary in the operating room as "they always had," and that he expected to have to pay the hospital for those items or for anything furnished to Mrs. Truly from appellant's pharmacy. We also agree with appellees that the testimony

of appellant's circulating nurse who was in charge of the surgery room may be reasonably construed as showing that a patient in the hospital will be charged for all medicines used in the surgery room, and that the charges will be included somewhere in the patient's bill.

We have reviewed the entire record. Under the tests set forth in *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1952), we hold the evidence is legally and factually sufficient to establish a sale of the Miochol by appellant to appellees within the meaning of the statutory provisions.

Appellant also contends that under the circumstances it was a "health-care provider of medical services" in the furnishing of the Miochol to appellees and not a seller of the drug within the meaning of the applicable statutory provisions, and that accordingly it cannot be held liable under appellees' theory of implied warranty because, at least in Texas, damages are not recoverable against hospitals and other health-care providers "under warranty and strict liability theories in situations where the use of defective medical equipment, supplies, or drugs has resulted in physical harm to the patient."

Our research reflects that this is a question of first impression in Texas. In justification of its position appellant cites *Barbee v. Rogers* (Tex.1968) 425 S.W.2d 342; *Shivers v. Good Shepherd Hospital, Inc.*, 427 S.W.2d 104 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.); *Ethicon, Inc. v. Parten*, 520 S.W.2d 527 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ); and *Vergott v. Deseret Pharmaceutical Company, Inc.*, 463 F.2d 12 (5th Cir. 1972). We do not believe these cases support the rule sought by appellant.

■ In *Barbee*, our Supreme Court refused to extend the doctrine of strict liability set forth in Restatement (Second) of Torts, § 402A[1] to the prescription, fitting

---

1. "Restatement (Second) of Torts, § 402A (1964):

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject

to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such product, and

and sale of contact lenses by licensed optometrists who had not manufactured the lenses. The court said, "The miscarriage [causing Petitioner Barbee's injury] if such there was, rests in the professional acts of Respondents and not in the commodity they prescribed, fitted and sold." In the course of its opinion the Court also noticed that "the issues found [by the jury] favorably to Petitioner did not submit the theory of an implied contractual warranty." In *Shivers*, although liability resting on the legal concepts of breach of contractual obligation and strict liability were asserted on appeal against the hospital, stemming from the administration intravenously of a contaminated anti-coagulant, the opinion establishes that the plaintiffs' action against the hospital was based solely upon negligence and that they did not allege any sale by the hospital. In *Ethicon*, a surgical needle manufactured by Ethicon broke off into the body of plaintiff Parten while she was undergoing surgery in the hospital. The opinion in the case does not reflect the nature of the action alleged against the hospital. It shows only that the hospital was granted an instructed verdict by the trial court, and that the hospital's liability was not an issue on the appeal. In *Vergott*, a defective intracath needle manufactured by Deseret Pharmaceutical Company caused a catheter to break off in a vein of Mrs. Vergott's arm while she was a patient in Mercy Hospital and was being given fluids intravenously by the hospital's nurse-employee. The hospital was a third-party defendant impleaded by Deseret. The jury found Deseret liable for Mrs. Vergott's injuries, but it exonerated the nurse of causal negligence. The trial court directed a verdict for Bard, the other third-party defendant, who purchased and

distributed the intracath needle, and denied Deseret's pleas for contribution. On appeal, Deseret sought indemnity or contribution from Bard and the hospital on the theory that they were liable as joint tortfeasors under the Restatement (Second) of Torts, § 402A. Although the Court expressed doubt that the contention was preserved for review because the case was not tried on the theory that Bard and Mercy Hospital "were engaged in the business of selling the product" (463 F.2d 16, footnote 4), the contention was considered and rejected on grounds which we need not notice. In the course of the opinion the Court said (at 463 F.2d 16, footnote 5): "Even if 402A is applicable, a hospital is not a seller engaged in the business of selling the product. Cf. *Perlmutter v. Beth David Hospital*, 1954, 308 N.Y. 100, 123 N.E.2d 792." It is this statement which appellant in our case cites in support of its "medical services" theory, but it is clear from the opinion that the statement was not at all the basis of the Court's ruling against Deseret. Moreover, it is our view that the *Perlmutter* case (cited in *Deseret* in support of the statement), limited to its facts, does not support appellant's "medical services" thesis in our case. *Perlmutter* was a 4–3 decision of the New York Court of Appeals denying recovery against a hospital for hepatitis contracted by a patient from transfusion of blood. The majority, over a vigorous dissent, held that the furnishing of the blood was not a sale, but a part of the service rendered by the hospital, and that no warranty was implied.[2] *Perlmutter* was decided in 1954. The Texas Business and Commerce Code was enacted in 1967. Acts 1967, 60th Leg., Vol. 2, ch. 785, p. 2343, § 1. At that time the Code included § 2.315 and § 2.316 as

---

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product *from* or *entered into any contractual relation with* the seller."

**2.** The decision of the majority in *Perlmutter* has been followed, questioned, criticized, and rejected. See *Jackson v. Muhlenberg Hosp.*, 96 N.J.Super. 314, 232 A.2d 879 (1967) and the authorities cited therein; *Hoffman v. Misericordia Hospital of Philadelphia*, 439 Pa. 501, 267 A.2d 867 (1970); *Cunningham v. MacNeal Memorial Hospital*, 113 Ill.App.2d 74, 251 N.E.2d 733 (1969). Cf. Segreti, "The Application of Implied Warranties To Predominantly 'Service' Transactions," 31 Ohio S.L.J. 580 (1970).

they presently exist. As we have previously stated, § 2.315, relied upon by appellees in our case, imposes an implied warranty of fitness of goods sold for a particular purpose, unless the warranty is "excluded or modified under the next section." The only pertinent exclusion set forth in § 2.316 is the following:

"(e) The implied warranties of merchantability and fitness shall not be applicable to the furnishing of human blood, blood plasma, or other human tissue or organs from a blood bank or reservoir of such other tissue or organs. Such blood, blood plasma or tissue or organs shall not for the purpose of this Title [Title 1. Uniform Commercial Code] be considered commodities subject to sale or barter *but shall be considered as medical services.*" (Emphasis supplied).

It is a familiar rule of statutory construction in Texas that a specific exception stated by the Legislature "makes plain the intent that the statute should apply in all cases not excepted." *State v. Richards*, 157 Tex. 166, 301 S.W.2d 597, 600 (1957). Any attempt by us to add the additional exclusion to § 2.315 now sought by appellant "would be repugnant to the statute." *Unigard Sec. Ins. Co. v. Schaefer* (Tex.1978) 572 S.W.2d 303, 307. Appellant's proposition is also untenable under another familiar rule of statutory construction which calls upon the courts to give effect to legislative change in a statute. When the Uniform Commercial Code was first adopted by our Legislature, § 2.316 did not include the limited "medical services" exclusion now included therein. Acts 1965, 59th Leg., Vol. 2, ch. 721, p. 25, § 2–316. If we should assume in support of appellant's argument that the Uniform Commercial Code as initially enacted was not intended to impose the warranty in § 2.315 against "health-care providers of medical services" generally, then the later action by our Legislature amending § 2.316 to include the single exception for "medical services" would evince the intent to change the prior law, and it is the duty of the courts to give effect to the change. *American Surety Co. of New York v. Axtell Co.*, 120 Tex. 166, 36 S.W.2d 715,

719 (1931); *Texas Bank & Trust Co. v. Austin*, 115 Tex. 201, 280 S.W. 161, 162 (1926).

■ The two-year statute of limitations, Vernon's Tex.Civ.St. art. 5526, is applicable to a cause of action based on implied warranty. *Richker v. United Gas Corporation*, 436 S.W.2d 215, 218 (Tex.Civ.App.—Houston 1969, writ ref'd n. r. e.). Appellant pleaded this statute in bar of appellees' deceptive trade practice action, and it contends the trial court erred in failing to sustain the plea under the undisputed facts of our case. We disagree. Appellees filed their original petition on April 28, 1977, alleging a cause of action against appellant based only upon negligence. That action was not then barred under article 5526. Appellees originally pleaded their deceptive trade practice suit based upon breach of implied warranty by their first amended petition filed on August 17, 1979, more than two years after their cause of action accrued. Vernon's Tex.Civ.St. art. 5539b provides as follows:

"Whenever any pleading is filed by any party to a suit embracing any cause of action, cross-action, counterclaim, or defense, and at the time of filing such pleading such cause of action, cross-action, counterclaim, or defense is not subject to a plea of limitation, no subsequent amendment or supplement changing any of the facts or grounds of liability or of defense shall be subject to a plea of limitation, provided such amendment or supplement is not wholly based upon and grows out of a new, distinct or different transaction or occurrence. Provided, however, when any such amendment or supplement is filed, if any new or different facts are alleged, upon application of the opposite party, the court may postpone or continue the case as justice may require."

Under this statute, the cause of action alleged in the amended petition filed after the limitation period is not barred merely because it is different from the cause of action originally and timely pleaded. The test is whether the cause of action alleged

in the amended petition is "wholly based upon and grows out of a new, distinct or different transaction and occurrence." *Leonard v. Texaco, Inc.* (Tex.1967) 422 S.W.2d 160, 163. In our case, appellees' action on implied warranty alleged in the amended petition and their timely filed original action were based upon the same transaction or occurrence. Therefore, appellant's limitation plea was properly overruled.

In their original petition, filed in April, 1977, appellees alleged that the Miochol drug was manufactured by Cooper Laboratories; that the drug was delivered by Cooper in a small two-chambered vial; that the vial containing the Miochol in question was supplied by Cooper to appellant; that the vial "had a loose upper stopper and when immersed in a sterilizing solution as instructed by [Cooper] allowed the sterilizing solution to become mixed with the Miochol"; that Cooper was guilty of causal negligence (1) in failing to properly seal the vial, and (2) in failing to warn of the danger of contaminating the Miochol with a sterilizing solution; and that appellant was guilty of causal negligence (1) in failing to recognize that the vial had a loose stopper, (2) in immersing the vial in a sterilizing solution of formaldehyde, and (3) in failing to properly sterilize the vial. In July, 1978, appellant filed its original contribution/indemnity action against Cooper Laboratories and Warner-Lambert Pharmaceutical Company, asserting that if it should be adjudged responsible for appellees' damages, then it was entitled to indemnity or contribution "under the facts alleged and proved under the pleadings of the plaintiff in this cause."

Appellees initially pleaded their deceptive trade practice action in their first amended petition which was filed on August 17, 1979. Appellant filed a sworn motion for continuance on August 24th, alleging that it received appellees' first amended petition on August 22nd; that the new pleadings constituted a "complete surprise" to appellant and would require it "to do additional discovery and produce additional testimony that it had not prepared for" under appel-

lees' original pleadings; and that appellant "may now be required to produce an expert who can testify as to the defectiveness or suitability for use of the Miochol container in question." The motion was considered and overruled by the trial court on August 24th. The case proceeded to trial on August 27th, and the jury returned its verdict on August 30th.

■ Appellant asserts the court's refusal to grant its motion for continuance was an abuse of discretion. Its single argument in support of the contention is that "It was impossible to obtain a witness to evaluate the vial of Miochol and prepare to testify at trial of this cause on August 27, 1979." There is no showing in the record that such witness is even available to appellant, nor that his testimony, if available, would be favorable to appellant. This is so, although in its motion for new trial appellant assigned error to the court's ruling on the motion for continuance, and a hearing was held on the motion for new trial on October 5, 1979, and evidence was adduced by appellant at that hearing on other assignments of error set forth in the motion. In other words, we are asked to reverse the judgment on the possibility that appellant can produce a witness who will testify in its favor on the question of "defectiveness or suitability" of the Miochol vial. In order to secure a reversal it is the burden of an appellant to show that the error complained of "amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." Rule 434, Vernon's Tex.Rules Civ. Proc. Appellant did not meet that burden on the complaint in question. The contention is overruled. See *Farrell v. Jordan*, 338 S.W.2d 269, 272 (Tex.Civ.App.—Houston 1960, writ dismissed); *McAx Sign Co., Inc. v. Royal Coach, Inc.*, 547 S.W.2d 368, 370 (Tex.Civ.App.—Dallas 1977, no writ); *Wilson Finance Co. v. State*, 342 S.W.2d 117, 121 (Tex.Civ.App.—Austin 1961, writ ref'd n. r. e.); *Davis v. National Acceptance Co.*, 233 S.W.2d 321, 325 (Tex.Civ.App.—Dallas 1950, writ ref'd n. r. e.); *Texas Employers*

*Insurance Association v. Jackson,* 366 S.W.2d 599, 603 (Tex.Civ.App.—Waco 1963, writ ref'd n. r. e.).

Appellant pleaded the settlement agreement between appellees and Cooper Laboratories and Warner-Lambert Pharmaceuticals under which appellees received $17,500.00 from each of those companies, and appellant then alleged (1) that it was entitled to have any judgment rendered against it in favor of appellees credited with the settlement sum of $35,000.00, or (2) that it was entitled to have the judgment against it "reduced by two-thirds," or (3) that the judgment "should be offset by the credit to which Defendant Providence Hospital is entitled at law."

Appellant's pleadings for credit of the settlement were based upon the "one satisfaction" rule. This limits a claimant's recovery to no more than the amount required for full satisfaction of his damages. *T. L. James & Co., Inc. v. Statham* (Tex. 1977) 558 S.W.2d 865, 868. Under it a nonsettling defendant is generally entitled to credit against the plaintiff's judgment the amount paid by a settling defendant to the plaintiff in compensation of the plaintiff's claim or injury. *Schering Corp. v. Giesecke,* 589 S.W.2d 516, 519 (Tex.Civ.App.—Eastland 1979, writ ref'd n. r. e.).

The trial court handled the settlement credit in this fashion: It first trebled the $15,000.00 actual damages found by the jury, and then credited that sum with $15,000.00, leaving appellees a recovery of $30,000.00 damages from appellant. The basis for this action is set forth in the following recitations in the judgment:

"The Court having found from said verdict, pleadings, and evidence herein that Plaintiffs are entitled to recover from said Providence Hospital for breach of the implied warranty by Providence Hospital under the terms of Sec. 2.315, Texas Business and Commerce Code, the amount of $15,000.00 as actual compensatory damages, that said actual damages should be trebled ... under the terms of Sec. 17.50, Texas Business and Commerce Code, and ... having further found that

Cooper Laboratories, Inc. and Warner-Lambert Pharmaceutical Company have jointly paid to Plaintiffs for the said injury to Plaintiff Goldie Truly's eye the sum of $35,000.00 as actual compensatory damages by reason of their settlement of Plaintiffs' assertion of an alleged cause of action for negligence against them, and that the judgment herein against Providence Hospital for Plaintiffs' actual compensatory damages found by the jury herein should be declared paid and satisfied to the extent of $15,000.00, the amount of Plaintiffs' actual compensatory damages that have been heretofore satisfied ... "

Appellant's point of error complaining of this action reads as follows:

"The trial court erred in failing to offset the jury's answer number 13 of $15,000.00 by at least one-half of the amount of plaintiffs' settlement ($17,500.00) with the drug companies."

Under this complaint appellant asserts only that it was entitled to a take-nothing judgment against appellees. It argues "since at least one-half of this settlement should be credited for the Appellant's benefit on any judgment in order to prevent double recovery, the Appellees are entitled to nothing under the verdict and judgment since the credit or offset must be allowed against actual damages. The actual damages in this case are $15,000.00."

In their response appellees recognize the one satisfaction rule, but they argue that the provision in the Deceptive Trade Practices Act for trebling the actual damages is penal in nature and exacts punitive damages for deterrence and other public policy reasons; that the rule of satisfaction of damages relates only to compensatory damages for loss; and therefore that the trial court correctly first determined the total amount appellees were entitled to recover under the Act, (by trebling the actual damages found by the jury) and then credited the total judgment with the amount of the settlement "[which was] paid in satisfaction of Appellees' compensatory damages" to only the portion of the judgment ($15,-

000.00) representing compensatory damages.

The primary question, then, is whether under the Deceptive Trade Practices Act the court properly trebled the actual damages before crediting the settlement against appellees' recovery.

In the recent cases of *Woo v. Great Southwestern Acceptance Corp.*, 565 S.W.2d 290, 298 (Tex.Civ.App.—Waco 1978, writ ref'd n. r. e.), and *Atlas Amalgamated, Inc. v. Castillo*, 601 S.W.2d 728, 730–731 (Tex. Civ.App.—Waco 1980, writ ref'd n. r. e.), we held that offsets pleaded by the defendant which stemmed from the transaction upon which the plaintiff based his deceptive trade practice suit should be credited against the plaintiff's damages before trebling. This was necessary in order to arrive at the plaintiff's actual damages in the transaction. The problem of crediting settlements received by the plaintiff from third-party defendants under the "one satisfaction" rule was not posed in those cases, and accordingly they are not controlling here.

So far as our research reveals, the question under review has never been decided by an appellate court.

 The provision for trebling actual damages under § 17.50(b)(1) of the Texas Deceptive Trade Practices Act was held to be mandatory by our Supreme Court in *Woods v. Littleton* (Tex.1977) 554 S.W.2d 662, 671. It was akin to the award of exemplary damages, being designed to deter violations of the Act and to encourage litigation of grievances by injured consumers. *Woo v. Great Southwestern Acceptance Corp.*, 565 S.W.2d 290, 298 (Tex.Civ. App.—Waco 1978, writ ref'd n. r. e.); *Crawford Chevrolet, Inc. v. McLarty*, 519 S.W.2d 656, 661 (Tex.Civ.App.—Amarillo 1975, no writ). The deduction from the plaintiff's actual damages before trebling of the amount paid by a settling defendant who was not sued under the Act would deny the plaintiff the full award required by the Act. It would also frustrate the legislature's purposes for the trebling provision; and it would discourage settlements. For these

reasons, we hold the trial court in our case correctly trebled appellees' actual damages before allowing credit for the settlement proceeds. For similar rulings in cases brought under the federal antitrust statute, which also mandates treble damages, see *Flintkote Company v. Lysfjord*, 246 F.2d 368, 398 (9th Cir. 1957), cert. den. 355 U.S. 835, 78 S.Ct. 54, 1 L.Ed.2d 46 (1957); *Bal Theatre Corp. v. Paramount Film Distributing Corp.*, 206 F.Supp. 708, 715 (N.D.Cal. 1962); *Semke v. Enid Automobile Dealers Association*, 320 F.Supp. 445, 447 (W.D.Okl. 1970), reversed on other grounds, 456 F.2d 1361 (10th Cir. 1972).

The settlement agreement between appellees and Cooper Laboratories and Warner-Lambert Pharmaceuticals provided that Cooper and Warner-Lambert were released and discharged "from any and all liability, claims, demands, suits or actions, whether now known or unknown, which claimants now have or may hereafter have in any capacity whatsoever, arising out of or resulting from the above-described occurrence or event"; and it recited further that "this is a release and discharge of releasees of and from any and all liability, claims, demands, causes of action or damages of every kind and character, past, present and future, resulting from or arising out of the above-described occurrence or event and any injuries and damages ... that have been or might be asserted by the claimants or either of them against releasees herein." The "occurrence or event" referred to in the settlement was the entire transaction giving rise to the injuries suffered by Mrs. Truly.

 It might be argued that the broad language of the release agreement conclusively establishes that the $35,000.00 paid appellees under it was intended, at least in part, as compensation for damages arising as the result of a deceptive trade practice by Cooper and Warner-Lambert, and that accordingly appellant is entitled to credit the settlement against appellees' judgment for trebled damages. We need not decide this question for these reasons: First, appellant does not seek that relief on appeal.

Second, appellant did not attempt to establish at the trial what part, if any, of the sum paid by Cooper and Warner-Lambert was in settlement of a deceptive trade practice action. This was appellant's burden. And third, as we have stated the trial court in its judgment expressly found on that issue (which did not go to the jury) that all of the $35,000.00 was paid "as actual compensatory damages" in settlement of appellees' negligence action against Cooper and Warner-Lambert. This finding has not been challenged on appeal. A finding of fact not challenged on appeal is binding on the parties and the reviewing court. *Rancho Camille, S. A. v. Beachum,* 596 S.W.2d 632, 638 (Tex.Civ.App.—Waco 1980, no writt).

Since the settlement was for compensatory damages only, and the trebled damages portion of appellees' judgment was in the nature of exemplary damages, we hold the trial court properly credited the settlement proceeds against only that part of the judgment which represented compensatory damages, i. e. $15,000.00 See *Hill v. Budget Finance & Thrift Company,* 383 S.W.2d 79 (Tex.Civ.App.—Dallas 1964, no writt) and the cases cited therein.

Appellant's remaining points and contentions do not reflect error under the record.

The judgment is affirmed.