CLINTON G. BROWN ET AL. V. IDA M. DARDEN.

No. 6184.  Decided May 25, 1932.
(50 S. W., 2d Series, 261.)

*Clinton G. Brown, C. R. Kennon, Josh H. Groce,* all of San Antonio, *Scott Hughes* and *Albert Sidney Johnson,* both of Dallas, *W. J. Embrey,* of Brenham, for appellants.

The State Democratic Executive Committee had the right, power and authority to adopt and enforce the method prescribed by the said resolution (which designated three numerical places) for the nomination of candidates for congressman at large from this state. Waples v. Marrast, 108 Texas, 5, 184 S. W., 180; Gilmore v. Waples, 108 Texas, 167, 188 S. W., 1037; Koy v. Schneider, 110 Texas, 369, 221 S. W., 881; Ferguson v. Wilcox, 119 Texas, 280, 28 S. W. (2d) 526; Love v. Wilcox, 119 Texas, 256, 28 S. W. (2d) 515; White v. Lubbock, 30 S. W. (2d) 722; Love v. Buckner, ante., 49 S. W. (2d) 425.

*C. L. Bell,* of San Antonio, *Lamar Gill,* of Raymondville, and *Bailey, Nickels & Bailey,* of Dallas, for appellee.

*Thos. B. Love,* of Dallas, amicus curiae.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

Certified question from the Court of Civil Appeals of the Fourth Supreme Judicial District in an appeal from the district court of Bexar County in the 94th Judicial District.

The State Democratic Executive Committee, on March 9, 1932, adopted a resolution, which reads:

"BE IT RESOLVED: That in the ensuing Democratic primary election nominations of candidates for congressmen at large shall be by a majority vote of those lawfully participating in such primary; that three places shall be designated on the official ballot, and each candidate shall be required to designate the place for which he seeks a nomination; and failing to secure a majority vote therefor in the first primary, a second primary shall be held and nomination effected in the same manner and way for each designated place as is now prescribed for candidates for the nomination of the party for the office of Governor in the State of Texas."

Thereafter Mrs. Ida M. Darden presented to the chairman of said committee a request, accompanied by tender of the proper fee, to have her name placed on the Democratic primary ballots, without further designation of the office for which she sought nomination than as the office of congressman at large. The request strictly complied with sections 1 and 2 of Article 3111 of the Revised Civil Statutes of Texas.

The committee advised Mrs. Darden that unless she designated whether she was a candidate for the nomination for congressman at large No. 1, or congressman at large No. 2, or congressman at large No. 3, the committee at its meeting to be held on the second Monday in June would refuse to place her name on the official primary ballots. Mrs. Darden refused to comply with the executive committee's resolution or request to further designate the place for which she was a candidate, but instead instituted a suit against the members of the committee to compel the certification on the second Monday in June of her name in order that it might appear on the Democratic primary ballots in accordance with her request as filed.

The district court on an agreed statement of the foregoing facts adjudged the committee's resolution to be void and ordered the members of the committee to accept Mrs. Darden's request and to direct their chairman to certify her name for a place on the primary ballots as a candidate for the Democratic

nomination for congressman at large without further designation of such office.

The members of the committee having duly appealed from the judgment of the district court, the Honorable Court of Civil Appeals of the Fourth Supreme Judicial District has certified to the Supreme Court for its determination, the following question:

■ "Did the State Executive Committee have the right, power and authority to adopt and enforce the method prescribed in the said resolution (which designated three numerical places) for the nomination of candidates for congressman at large from this state?"

The court answers the question "Yes."

The only Federal statute attempting to regulate party nominations for congressman at large, which is relevant to our inquiry, reads as follows: "Candidates for representative or representatives to be elected at large in any state shall be nominated in the same manner as candidates for governor, unless otherwise provided by the laws of such state." U. S. C. A., Title 2, sec. 5.

■ There is no necessity for any determination as to whether this statute is void under the reasoning in the opinions in cases like Newberry v. United States, 256 U. S., 232; for by the very terms of the Federal statute, where a state has enacted laws governing such nominations they must control, and we have reached the conclusion that the statutes of Texas require and support the action of the State Democratic Executive Committee.

■ At the outset we are confronted by the fact that Mrs. Darden rests her case on the proposition that Article 3111 of the Revised Civil Statutes of Texas does govern the office to which she seeks the Democratic nomination. The contention in her behalf is that the State Committee should be compelled to certify her name for a place on the primary ballot, on her request, because such request fulfills the requirements of Article 3111, to which requirements no addition nor subtraction can lawfully be allowed. Yet, if Article 3111 does govern, it is solely for the reason that within its meaning the office of congressman at large is a state office. For, if Article 3111 relates to no one save to a candidate for a party's nomination "for any state office." Obviously the words "state office" have the same meaning in Article 3111 as in Article 3102, dealing with the same subject matter of party primary nominations. And in

Article 3102 it is distinctly provided that "no person shall be declared the nominee of any political party at any primary election for any state * * * office unless he * * * has received a majority of all the votes cast at such primary election for all candidates for such office." So, we cannot accept as sound Mrs. Darden's main contention, viz: that Article 3111 governs her right to have her name placed on the primary ballots without requiring her to secure "a majority of all the votes cast at such primary election for all candidates" for the office to which she aspires to be nominated. Some such action as that which she assails is necessary if congressmen at large are to be nominated by majority votes.

■ An examination of the whole body of primary law in Texas leaves no room for doubt of the legislative intent to require the nomination of Democratic candidates for congressman at large by votes of a majority.

By means of this suit Mrs. Darden seeks to become the candidate of the Democratic party for the office of congressman at large. Article 2978 provides: "The name of no candidate of any political party that cast one hundred thousand votes or more at the last preceding general election shall be printed on any official ballot for a general election unless nominated by primary election, on primary election day, except as herein otherwise provided." It is, of course, conceded that the Democratic party cast more than one hundred thousand votes at the last general election and it is not claimed that the Legislature has attempted to provide a method of nominating congressmen at large otherwise than by primary election. Not only does Article 2978 forbid the nomination by the Democratic party of congressmen at large in any other manner than by primary election, but Article 3101 expressly names "candidates for congress" as those who must "be nominated in primary elections by the qualified voters" of the organized political party that cast one hundred thousand votes or more at the last general election. Article 3170 limits to two thousand five hundred dollars the total expenditure for all purposes connected with furthering or opposing the candidacy of any person for a nomination for all offices, except United States Senator and Governor, "to be chosen by the voters of the entire state, including judges of the courts of last resort, district members of congress, and members of congress at large." And then said article provides that four-fifths of said sum may be expended in the campaign preceding the first primary and the remainder in the campaign preceding the second primary.

■ The act limiting campaign expenditures in primary elections explicitly defines a "state nomination" to mean "the nomination for any office to be filled by the choice of the voters of the entire state." Article 3168, R. S. We see no foundation for ascribing to the Legislature an intent to use in Article 3168 the phrase "candidates for a state nomination" in one sense and then to use in an entirely different sense in Articles 3111 and 3102 the phrase "candidates for the nomination * * * for any state office," or the phrase "nominee of any political party * * * for any state office." Such a holding would disregard the familiar rule of statutory construction which requires that: "Whenever a legislature has used a word in a statute in one sense and with one meaning, and subsequently uses the same word in legislating on the same subject-matter, it will be understood as using it in the same sense, unless there be something in the context or the nature of things to indicate that it intended a different meaning thereby." 36 Cyc., 1150; 25 R. C. L., p. 974, sec. 238. The rule applies when the phrases are substantially the same. As we construe Articles 3102 and 3111, the words "nominee for any state office," or "candidate for the nomination for a state office," simply mean a nominee or candidate for a nomination "to be chosen by the vote of the entire state," and such a nominee is one for the office of congressman at large. Not only does Article 3102 forbid that any person be declared such a nominee unless he has received a majority of all the votes cast at the primary election for the candidates for the office sought, but the article further provides that "only the name of the two candidates who received the highest number of votes for any office * * * shall be placed on the official ballot as candidates for such office at such second primary" and that only "the candidates receiving a majority of all votes cast for the office to which they aspire shall be declared the nominee for their respective offices."

The ultimate purpose of Mrs. Darden's suit is to have her name certified by the State Executive Committee and by the State Convention, under Articles 3137 and 3138 of the Revised Statutes as a nominee of the Democratic party for congressman at large. Under those articles no one can be declared such nominee save one "who has received a majority of votes cast for all candidates for such office in the first primary election, if any candidate receives a majority of all the votes cast for all the candidates for such office at said primary election, and if no candidate received such majority, then it shall declare the candidate who received a majority of all votes cast for such

office at the second primary election, the nominee of the party for such office; and the chairman and the secretary of the State convention shall forthwith certify all such nominations to the Secretary of State."

"We are unable to perceive how it can be successfully maintained that less than three nominations are sought in the Democratic primaries for congressman at large. If three such nominations are to be made, then Article 3109 demonstrates the correctness of our construction of Articles 3101, 3102 and 3111. For Article 3109 commands that in printing the "names of all candidates" on the official primary ballot, "those *for each nomination*" shall be "arranged in the order determined by the various committees as herein provided for beneath the title of the office for which the nomination is sought." There being candidates for nominations to three offices, the candidates for *each* nomination could not possibly be arranged as required by this article unless the State Committee had certified to the various county committees the names of those aspiring to nomination for each office. So, compliance with Article 3109 necessitates some such action by the State Executive Committee as that embodied in its resolution of March 9th.

Whenever the Texas statutes undertake to make regulations pertaining to party primaries, the State Executive Committee is almost universally treated as the supreme party authority, within the State, save when the party voters declare their wills through primary ballots or in conventions of themselves or of their delegates. Party usage recognizes no higher authority within the State prior to party primaries or conventions than the State Executive Committee. Therefore, were we convinced that there was no valid Federal or State statute governing the nomination of congressman at large, we would uphold the power of the State Executive Committee to adopt the resolution of March 9th, in the exercise of its fair and reasonable discretion in such matters. Love v. Buckner, ante, 49 S. W. (2d) 425.