FANNIE KELLOGG DEUR, appellant, v. MARGARET W. KELLOGG; RAYMOND A. SMITH et al., administrators of estate of GEORGE A. KELLOGG, deceased, et al., appellees.

No. 48461.

(Reported in 63 N. W.2d 923)

690

April 7, 1954.

Hugh J. Tamisiea, of Missouri Valley, and Roy E. Havens, of Logan, for appellant.

Raymond A. Smith, of Council Bluffs, and A. V. Shotwell, of Omaha, Nebraska, for appellees Margaret W. Kellogg; Raymond A. Smith et al., administrators of the estate of George. A. Kellogg.

Jepson & Jepson, of Sioux City, for appellee Helen Noyes Lundstrum.

Carl V. Burbridge, of Logan, guardian ad litem, for all appellees who may be minors, insane or under any legal disability whatsoever, and who may be in the military or naval service of the United States.

SMITH, J.—Involved here is a question of heirship requiring a consideration of sections 636.32, 636.39, 636.40 and 636.41, Iowa Code, 1950.

George A. Kellogg died intestate and without issue, leaving: his widow, defendant Margaret W. Kellogg; a half sister, plaintiff, Fannie Kellogg Deur; and the three heirs of Elizabeth Kellogg, a former wife who died "in lawful wedlock." The last mentioned three are named in the record as Helen Noyes Lundstrum, Robert Noyes and ................. Noyes (Christian name unknown).

Decedent's father was L. M. Kellogg (also father of plaintiff by an earlier marriage) and decedent's mother was Johanna Kellogg, of whom there are no known surviving heirs. Plaintiff's mother was Mary McKivegan Kellogg.

Code section 636.32, after providing that in the absence of issue and after payment of debts and administration expense, the surviving spouse of an "intestate" shall receive $15,000 and one half of all in excess of that amount, then gives "the other one half of said excess" to his parents.

Section 636.39 provides: "If one of the parents is dead, the portion which would have gone to such deceased parent shall go to the survivor * * *." And section 636.40 states: "If both parents are dead, the portion which would have fallen to their share by the above rules shall be disposed of in the same manner as if they had outlived the intestate and died in the possession and ownership of the portion thus falling to their share, and so on, through ascending ancestors and their issue."

Section 636.41, under which the trial court determined the present controversy, provides: "If heirs are not thus found, the portion uninherited shall go to the spouse of the intestate * * * and if such intestate has had more than one spouse who either died or survived in lawful wedlock, it shall be equally divided between the one who is living and the heirs of those who are dead * * * such heirs taking by right of representation."

It is conceded here that the defendant widow by virtue of section 636.32 is entitled to one half of the "excess" remaining after payment of expenses, debts and her $15,000; and that plaintiff, as remaining heir of decedent's father, is entitled to

one half of the other half, or one fourth, of said "excess." The only dispute is over the remaining one fourth of said "excess" which would go to the heirs of decedent's mother if any were known. The trial court held it should go, under section 636.41, one half to defendant widow and the other half to the defendant heirs of Elizabeth, decedent's first wife who "died in lawful wedlock."

The case reaches us by plaintiff's appeal from a ruling on her application for separate adjudication of law points in a suit for partition and to quiet title.

I.   Plaintiff's claim is predicated on a construction of Code sections 636.40 and 636.41 which we deem unsound. Her argument runs substantially as follows: Section 636.40 provides that if both parents (of the immediate decedent) are dead, the shares they would have taken (under section 636.32) if living, shall go to their heirs. And the word "intestate" in the phrase "spouse of the intestate" as used in the following section (636.41) means in this case the immediate intestate's deceased parent whose "heirs are not thus found."

Under that interpretation George's mother, Johanna, would be the "intestate" here and her "portion uninherited" would go to plaintiff, the heir of L. M. Kellogg, the spouse who survived Johanna "in lawful wedlock."

Thus plaintiff, concededly entitled to the share that would have gone to her own and George's father had he survived his son, claims also the share that would have gone to George's mother, Johanna (plaintiff's stepmother), had she, Johanna, survived her son.

We think this construction violates the plain intent of the language of the pertinent Code sections. The best clue to its intended meaning is perhaps the way the word "intestate" is used throughout other parts of the statute. See Brown v. Darden, 121 Tex. 495, 50 S.W.2d 261, 263; Betz v. Horr, 276 N. Y. 83, 11 N.E.2d 548, 550, 114 A. L. R. 491; United States v. Cooper Corp., 312 U. S. 600, 606, 607, 61 S. Ct. 742, 744, 745, 85 L. Ed. 1071. In section 636.32 the immediate decedent, devolution of the title of whose property is the primary subject of inquiry, is distinctly referred to as "the intestate."

Section 636.39 again speaks of "the intestate's spouse" clearly meaning the surviving spouse of the immediate decedent. Section 636.40, with equal clarity of meaning, refers to the parents of "the intestate." Even the opening words of section 636.41 itself indicate unmistakably a search for *heirs* of the *immediate* "intestate" and provide that if, under preceding statutes they are not found, "the portion *uninherited* shall go to the spouse of the intestate"—clearly the intestate whose heirs are being sought.

Plaintiff argues earnestly for a construction that recognizes the "fundamental principle" of keeping the devolution of a decedent's property in his "closest bloodline", the design of the statutes being to trace "inheritable blood": "It is only when no 'inheritable blood' can be found, that the provisions of section 636.41 are made applicable to the spouse of the *immediate* intestate. In such case, the bloodlines having become extinct, the property 'uninherited' which would otherwise have escheated, due to the failure of such bloodlines, passes to the spouse of the *immediate* intestate, or is divided between such spouse and the heirs of a predeceased spouse of such *immediate* intestate."

This argument seems to require an elastic interpretation of the word "intestate" as it appears in section 636.41. After the fruitless search for "inheritable blood" has been made through sections 636.32, 636.39 and 636.40, "in order of priority", according to plaintiff, we come to the opening words of section 636.41: "If heirs are not thus found." Plaintiff would interpret these words to mean "if *inheritable blood* is not thus found." Then and only then, it is contended, will the word "intestate" in section 636.41 be held to mean the *immediate* decedent.

Unfortunately for this argument the legislature did not say "if *inheritable blood* is not thus found"—as it could so easily have said had it so meant. It seems more probable the lawmakers were prescribing rules for the devolution of title of intestate property in order to avoid escheat. In re Estate of Tripp, 239 Iowa 1370, 35 N.W.2d 20.

Plaintiff's interpretation would not lead invariably to "inheritable blood" though of course applying it here would do so

since George A. Kellogg's mother, Johanna, who would be the "intestate", never had any spouse but George's father whose sole heir is plaintiff.

But suppose Johanna had had an earlier spouse who predeceased her "in lawful wedlock" and whose living heirs by an earlier marriage were known. Those "alien" heirs would, under plaintiff's theory, share with plaintiff as heirs of Johanna. Or suppose plaintiff did not exist. Those heirs would take Johanna's entire portion of her son's estate though entirely outside her own and her son's "bloodline."

■ We think the clear meaning of the word "intestate" in the phrase "spouse of the intestate" in Code section 636.41 is the decedent, devolution of whose property is the subject of the inquiry.

■ II. It must be conceded some language in In re Estate of Tripp, 239 Iowa 1370, 1374, 35 N.W.2d 20, lends support to plaintiff's contention. We were there considering a case in which the immediate decedent was unmarried and no spouse survived or predeceased him "in lawful wedlock." The choice confronting the court was between possible "inheritable blood" and escheat.

We pointed out this distinction in Ramsay v. All Unknown Claimants, 241 Iowa 715, 718, 42 N.W.2d 386, in which the controversy was between: the immediate decedent's surviving spouse and the heirs of his predeceased first spouse on the one hand; and on the other hand the known heirs of his predeceased mother. We held, in effect, that the surviving widow, and the heirs of the predeceased spouse, of J. J. Ramsay, the immediate decedent or intestate, were entitled, under Code section 636.41, to the one-fourth share that would have gone to his unrecognized natural father, or the heirs of such father, had there been mutual recognition under Code section 636.46.

In no case, under Code section 636.41, have we denied the right of the *immediate* intestate's spouse to the "portion uninherited" in favor of the spouse of the deceased parent whose heirs were unknown.

McAllister v. McAllister, 183 Iowa 245, 167 N.W. 78, has been mistakenly assumed to be such a case. The confusion has arisen perhaps because it was a partition suit involving the

property of Charles McAllister, the father of the immediate "intestate", Alexander McAllister, devolution of whose property was the immediate concern of the court.

The father, Charles, devised one half of his estate to Alexander, who predeceased him, leaving a widow but no issue. The devise did not lapse however (due to the antilapse statute, now section 633.16). Alexander's mother's heirs were unknown. We held Alexander was the "intestate" and his widow was "spouse of the intestate" under the pertinent Code section (now 636.41). The opinion says:

"Heirs of the mother [of Alexander] not having been found, the widow of the intestate, i.e. the predeceased devisee, took, under this statute, the portion which would have gone to the mother * * * had she survived the devisee. * * * By 'spouse of the intestate' is meant spouse of the person whose heirs are sought to be ascertained, as entitled to the property in probate." (183 Iowa at page 255, 167 N.W. at page 81.)

In the Ramsay case, supra (241 Iowa at page 718, 24 N.W.2d at page 388), we said with equal certainty: "If heirs of the intestate 'are not thus found' the search for heirs to the 'portion uninherited' starts anew with the lines of intestate's wives. * * * The spouse and heirs of the deceased spouse of the intestate take direct from the intestate and not as heirs of intestate's father or any third person." We think that must be our answer to this appeal.

The instant case was argued on both sides with signal ability and precision of language. The exact nature of the contention of the respective parties is not left in doubt. The trial court correctly decided the issue and the case should be and is affirmed.—Affirmed.

BLISS, C. J., and OLIVER, GARFIELD, MULRONEY, WENNER-STRUM, THOMPSON, and LARSON, JJ., concur.