Clinton DeWolfe, O.D. Chairman Texas Optometry Board P.O. Box 988 Blanco, Texas 78606
Re: Whether the Texas Optometry Act prohibits an optician from giving another free pair of spectacles, eyeglasses or contact lenses to a person who purchases a first pair (RQ-1667)
Dear Dr. DeWolfe:
You inform us that opticians and national laboratories have recently offered a free pair of eyeglasses or contact lenses to purchasers of a first pair of glasses or contact lenses. You ask whether these "buy-one, get-one-free" sales violate section 5.06 of the Texas Optometry Act and a board rule based on that section. Section 5.06 provides as follows:
 It shall be unlawful for any person in this state to give, or cause to be given, deliver, or cause to be delivered, in any manner whatsoever, any spectacles or eyeglasses, separate or together, as a prize or premium, or as an inducement to sell any book, paper, magazine or any work of literature or art, or any item of merchandise whatsoever. (Emphasis added.)
V.T.C.S. art. 4552-5.06. A person who violates any provision of the Texas Optometry Act is guilty of a misdemeanor punishable by a fine, confinement in the county jail, or both. V.T.C.S. art. 4552-5.19.
An Optometry Board rule provides that "no person in this state shall give . . . any contact lenses as a prize or premium, or as an inducement to sell any book, paper, magazine, or any work of literature or art, or any item of merchandise whatsoever."22 T.A.C. § 273.3. The rule does not state that it is unlawful to give contact lenses as a premium to sell an item of merchandise.
You ask whether section 5.06 and board rule 273.3 prohibit giving a second pair of spectacles, eyeglasses, or contact lenses to a person who purchases a first pair. If we conclude that this practice is prohibited, you ask whether it would also prohibit a gift of free frames or free lenses as an inducement to sell eyeglasses, and a sale of eyeglasses, frames, or lenses for one cent or another insignificant amount.
Article 4552-1.02, V.T.C.S., provides in part:
 The `practice of optometry' is defined to be the employment of objective or subjective means . . . for the purpose of ascertaining and measuring the powers of vision of the human eye, and fitting lenses or prisms to correct or remedy any defect or abnormal condition of vision. . . .
V.T.C.S. art. 4552-1.02(1).
A "dispensing optician" or "opthalmic dispenser" is defined as "a person not licensed as an optometrist or physician who sells or delivers to the consumer fabricated and finished spectacle lenses, frames, contact lenses, or other opthalmic devices prescribed by an optometrist or physician." V.T.C.S. art. 4552-1.02(5). See V.T.C.S. art. 4552-1.02(3)(A) (ophthalmic dispenser is not prohibited from making facial measurements to dispense or adapt ophthalmic prescriptions or lenses, products and accessories). See also Williamson v. Lee Optical of Oklahoma,348 U.S. 483, 486 (1955) (an optician is qualified to grind lenses, fill prescriptions, and fit frames).
A "two-for-one" sale of eyeglasses by a dispensing optician may merely be a pricing policy which gives a volume discount. We will not, however, deal with your question in terms of pricing policies that may be adopted by persons who sell prescription glasses. Instead, we will consider whether a pair of spectacles, eyeglasses, or contact lenses is an "item of merchandise" within section 5.06 of the act.
Article 4552 does not define the term "merchandise," but it uses this word in other provisions. When the same word is used more than once in a statute, it will be given the same meaning, unless a different intent is indicated. Brown v. Darden, 50 S.W.2d 261
(Tex. 1932).
Article 4552-5.17, V.T.C.S., provides in part:
 Nothing in this Act shall be construed to apply to persons who sell ready-to-wear spectacles and eyeglasses as merchandise at retail. . . . (Emphasis added.)
V.T.C.S. art. 4552-5.17. The definition of the "practice of optometry" includes a similar provision on selling ready-to-wear spectacles or eyeglasses as merchandise. V.T.C.S. art. 4552-1.02(1).
These provisions apply to the sale of mass-produced items like non-prescription sunglasses and eyeglasses that are essentially magnifying glasses in a frame. These items are not custom-made to correct the wearer's defects in vision and no special order is necessary to buy them.[1]
"Merchandise" has been broadly defined as "all goods which merchants usually buy and sell, whether at wholesale or retail; wares and commodities such as are ordinarily the objects of trade and commerce." Black's Law Dictionary 890 (5th ed. 1979); see also Hein v. O'Connor, 15 S.W. 414 (Tex.Ct.App. 1891). A "merchant" is a "person who purchases goods at wholesale for resale at retail." Black's Law Dictionary, supra.
"Merchandise" has also been defined more narrowly to exclude an item which was specially prepared or modified according to the purchaser's specifications. A Missouri court has held that a contract to prepare and set up a monument in a cemetery was a contract for labor and not a contract for "goods, wares, and merchandise" within the state's statute of frauds. Carrollton Monument Co. v. Geary, 240 S.W. 506 (Mo.Ct.App. 1922).
Texas courts have also recognized this distinction in defining "merchandise" under the Bulk Sales Law, which applies to the sale in bulk of a stock of merchandise, or merchandise and fixtures pertaining to conducting said business otherwise than in the ordinary course of trade.[2] Hobart MFG. Co. v. Joyce 
Mitchell, 4 S.W.2d 185, 187 (Tex.Civ.App.-Fort Worth 1928, no writ). In Axtell Co. v. Word, 29 S.W.2d 421 (Tex.Civ.App.-Austin 1930, no writ), the court stated that Texas courts have construed the Bulk Sales Act as not applying to "stock on hand used as incidental to or in connection with labor or mechanical skill." The court further stated as follows:
 The words, `stock of merchandise,' as used in the statute have been uniformly construed by our courts to be used in the common and ordinary acceptation of those terms, and to mean the goods, wares, or chattels which a merchant holds for sale at retail for profit, and which are constantly going out of the store . . . and being replaced by other goods without any appreciable change of character by the labor or mechanical skill of purchaser [i.e., of the person who purchased the goods for resale].
29 S.W.2d 421.
Thus "merchandise" in some statutes does not include items which must be changed and adapted to the customer's individual requirements. We believe that the Texas Optometry Act uses "merchandise" in this sense. In section 5.17, "ready-to-wear spectacles and eyeglasses" sold "as merchandise at retail" are mass-produced goods not adapted to the customer's vision. This language does not include eyeglasses and spectacles that may only be sold on a prescription. The same definition of "merchandise" also applies to the prohibition in article 4552-5.06, V.T.C.S., against giving away eyeglasses as an inducement to sell a book, paper, magazine, work of literature or art, "or any item of merchandise." Article 4552-5.06 does not prohibit a dispensing optician or ophthalmic dispenser from giving away a second pair of prescription eyeglasses as a means of motivating people to have him fill the prescription for the first pair.
Two other provisions of the Texas Optometry Act show that a "mercantile establishment" does not include the business premises of a dispensing optician. Article 4552-5.14 regulates the business practices of an optometrist "who leases space from and practices optometry on the premises of a mercantile establishment." V.T.C.S. art. 4552-5.14(a). See generally Attorney General Opinion O-1588 (1939) (practice by optometrists in jewelry stores). It requires the leased space to be separated from space used by other occupants of the premises and prohibits operation of the optometrist's practice as a department of the mercantile establishment. V.T.C.S. art. 4552-5.14(d) — (g).
Article 4552-5.15, V.T.C.S., governs the business relationships of optometrists with dispensing opticians. It permits a dispensing optician to lease space to an optometrist. It also provides for complete separation between the premises of an optometrist and a dispensing optician if both occupy space in the same building. See Attorney General Opinion MW-292 (1981).
Both provisions deal with the leasing of premises and with separating an optometrist's business from other types of business conducted in the same building. The legislature's adoption of separate provisions to govern the optometrist's relationship to "mercantile establishments" and to "dispensing opticians" indicates that a dispensing optician does not operate a "mercantile establishment." These provisions carry out and support the distinction between "merchandise" and prescription glasses and contact lenses which we have found in article 4552-5.06, V.T.C.S.
Moreover, this situation appears to be an appropriate case for applying the maxim of ejusdem generis. Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words. Employees' Casualty Co. v. Stewart Abstract Co., 17 S.W.2d 781 (Tex.Comm'n App. 1929).
The first version of article 4552-5.06 was adopted in 1925. Acts 1925, 39th Leg., ch. 31, at 149. We are unaware of any history evidencing the legislature's intent in adopting this provision, although its language suggests that it was directed at a practice of giving away eyeglasses with the purchase of reading material. It is however reasonable to assume that the legislature adopted this provision to protect members of the public from receiving eyeglasses with lenses that would not correct their defects in vision. The provision of two pairs of prescription glasses for the price of one does not violate this policy.
Since we have concluded that "buy-one, get-one-free" sales do not violate article 4552-5.06, V.T.C.S., we need not answer your other questions, which are contingent on a contrary determination.
 SUMMARY
The Texas Optometry Act does not prohibit a dispensing optician or an ophthalmic dispenser from giving a second free pair of prescription spectacles, eyeglasses, or contact lenses to a person who purchases a first pair. Article 4552-5.06, V.T.C.S., which prohibits any person from giving spectacles or eyeglasses as an inducement to sell "any book, paper, magazine, or any work of literature or art, or any item of merchandise," does not prohibit "buy-one, get-one-free" sales of prescription glasses by dispensing opticians or ophthalmic dispensers.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Mary Keller First Assistant Attorney General
 Lou McCreary Executive Assistant Attorney General
 Judge Zollie Steakley Special Assistant Attorney General
 Rick Gilpin Chairman, Opinion Committee
 Prepared by Susan L. Garrison Assistant Attorney General
[1] A prior version of section 5.06 describes in some detail the sale of eyeglasses as merchandise. A 1925 bill amending the statute regulating optometrists provided that "[p]ersons who sell spectacles and eye-glasses as merchandise" meant "merchants who do not practice optometry, or offer to practice optometry, but who sell spectacles or eye-glasses as merchandise, after they have been selected by their customers alone without the aid from the merchant . . . other than the particular and complete and ready-to-wear spectacles or eye-glasses selected by the customer in person from trays or other containers. . . ." Acts 1925, 39th Leg., ch. 31, § 13-c, at 151.
[2] The Bulk Sales Act has been repealed and replaced by the Uniform Commercial Code — Bulk Transfers, Bus. Com. Code ch. 6. We have cited cases which construe the Bulk Sales Law to illustrate a possible definition of "merchandise." We express no opinion on whether the frames and lenses which a dispensing optician adapts in accordance with written prescriptions would be "merchandise" within the Bulk Transfers provisions.