

# Fourth Court of Appeals
## San Antonio, Texas

## DISSENTING OPINION

No. 04-15-00610-CV

**LAREDO MERCHANTS ASSOCIATION**,
Appellant

v.

**CITY OF LAREDO**,
Appellee

From the 341st Judicial District Court, Webb County, Texas
Trial Court No. 2015CVQ001077-D3
Honorable Beckie Palomo, Judge Presiding

Opinion by:    Marialyn Barnard, Justice
Dissenting Opinion by:  Luz Elena D. Chapa, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
            Marialyn Barnard, Justice
            Luz Elena D. Chapa, Justice

Delivered and Filed:  August 17, 2016

I respectfully dissent because when section 361.0961 of the Solid Waste Disposal Act is construed within the context of the entire statute, the SWDA does not preempt the City of Laredo's Checkout Bag Reduction ordinance.

The majority construes section 361.0961 as prohibiting a type of source reduction that reduces the generation of municipal solid waste. *See* TEX. HEALTH & SAFETY CODE ANN. § 361.0961 (West 2016). This construction is unreasonable because it contradicts "the state's goal, through source reduction, to eliminate the generation of municipal solid waste." *See id.* § 361.022(a). When we consider the legislature's intent in enacting the SWDA, the manner in

which the legislature consistently used the term "container," and the legislature's placement of section 361.0961 within the SWDA's overall structure, section 361.0961 may reasonably be construed in harmony with the state's goal of promoting source reduction. More specifically, "container" in section 361.0961 may reasonably be construed as referring only to *solid waste containers* used to store, transport, process, or dispose of solid waste. Because the Ordinance does not apply to *solid waste containers*, the SWDA and the Ordinance may both be given effect.

### I. Does the SWDA preempt the Ordinance?

An ordinance is unenforceable to the extent that it is inconsistent with a state statute preempting that particular subject matter. *BCCA Appeal Grp., Inc. v. City of Hous.*, No. 13-0768, 2016 WL 1719182, at *2 (Tex. Apr. 29, 2016). The mere entry of the state into a field of legislation does not necessarily preempt all related municipal ordinances, especially when the municipal ordinance is "ancillary to and in harmony with the general scope and purpose of the state enactment." *Id.* A statute that may reasonably be construed as not conflicting with a challenged ordinance must be given that construction so both the statute and the ordinance may be given effect. *See id.* To determine whether a statute preempts an ordinance, a court must construe the statute. *See id.* at *3.

A court's primary objective when construing statutes is to give effect to legislative intent. *Id.* To determine legislative intent, a court first looks to the plain meaning of the text as the sole expression of legislative intent, unless a different meaning is apparent from the context. *Id.* A court must "view[] the statute as a whole, not just as specific provisions in isolation." *Id.* at *6. "[O]ne provision will not be given a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such a construction if standing alone." *Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex. 1978). "[Absent] language clearly indicating a contrary intent, a word or

phrase used in different parts of a statute is presumed to have the same meaning throughout, and where the meaning in one instance is clear, this meaning will be attached in all other instances." *Sw. Props., L.P. v. Lite-Dec of Tex., Inc.*, 989 S.W.2d 69, 71 (Tex. App.—San Antonio 1998, pet. denied); *see Brown v. Darden*, 121 Tex. 495, 500, 50 S.W.2d 261, 263 (1932). A court should "avoid ascribing one word a meaning so broad that it is incommensurate with the statutory context." *See Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 61 (Tex. 2015). A court's construction of a statute should also be consistent with its underlying purpose and the policies it promotes. *N.W. Nat'l Cty. Mut. Ins. Co. v. Rodriguez*, 18 S.W.3d 718, 721 (Tex. App.—San Antonio 2000, pet. denied).

Additionally, a court's construction of a statutory provision should be consistent with the statute's organizational structure. *See TIC Energy & Chem., Inc. v. Martin*, — S.W.3d —, No. 15-0143, 2016 WL 3136877, at *6-7 (Tex. June 3, 2016) (noting "the structure of the subchapter in which sections . . . reside is instructive"). Sections should not be viewed in isolation, but in context of surrounding sections. *See id.* A court should "thus begin by looking at the structure of [the statute] and the placement of [the section] within it." *See Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 398 (Tex. 2000); *see, e.g.*, *Lumbermens Mut. Cas. Co. v. Manasco*, 971 S.W.2d 60, 63 (Tex. 1998) (reaching a construction of a section "[b]ased on the wording and placement of [the section] in the statutory framework").

**A. How did the legislature structure the SWDA?**

The SWDA, codified as chapter 361 of the Health & Safety Code, generally governs solid waste management. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 361.001-.992 (West 2016). The SWDA declares it the public policy of the state to eliminate the generation of municipal solid waste through source reduction. *Id.* § 361.022(a). For municipal solid waste that is generated, the

SWDA's purposes are "to safeguard the health, welfare, and physical property of the people and to protect the environment by controlling the management of solid waste." *Id.* § 361.002(a). The SWDA's twenty-four subchapters aim to further the state's public policy and the underlying goals of the statute. *See id.* §§ 361.001-.992.

To further its municipal source reduction goals, subchapter B establishes the Texas Commission on Environmental Quality's Office of Pollution Prevention, which "direct[s] and coordinate[s] all [TCEQ] source reduction and waste minimization activities." *Id.* § 361.0216. The TCEQ has three such activities under the SWDA. First, subchapter B requires the TCEQ to develop a public awareness program "to encourage participation in source reduction, composting, reuse, and recycling." *Id.* § 361.0202(a). As part of this program, the TCEQ may "consult with individuals, businesses, and manufacturers on source reduction techniques and recycling." *Id.* § 361.0202(b)(1). Second, subchapter N requires the TCEQ to measure progress toward the state's source reduction and waste minimization goals and to incentivize composting and recycling programs. *Id.* §§ 361.422(a), (c); 361.423-.430. Subchapter N defines "source reduction" as:

> [A]n activity or process that avoids the creation of municipal solid waste in the state by reducing waste at the source and includes:
>
> > (A) redesigning a product or packaging so that less material is ultimately disposed of;
> > (B) changing a process for producing a good or providing a service so that less material is disposed of; or
> > (C) changing the way a material is used so that the amount of waste generated is reduced.

*Id.* § 361.421(9). Third, subchapter Q addresses industrial source reduction, defined by reference to federal law, and waste minimization for generators of industrial solid waste. *Id.* §§ 361.131(4); 361.501(7), (11); 361.504(a).

Contemplating that source reduction will not entirely eliminate municipal solid waste, the SWDA confers responsibility upon the TCEQ "for the management of municipal solid waste" and requires the TCEQ to "coordinate municipal solid waste activities." *Id.* § 361.011(a); *id.* § 361.022 (requiring source reduction and waste minimization "to the extent technologically and economically feasible"). The SWDA governs the management of various forms of solid waste, including municipal waste, industrial waste, medical waste, and hazardous waste. *See id.* § 361.003(12), (16), (18-a), (20), (35). The SWDA's subchapters governing solid waste management provide the TCEQ's and local governments' powers and duties; the TCEQ's permit and regulatory system for solid waste facilities; enforcement procedures; environmental remediation; diversion of materials from solid waste streams; land-use restrictions and designations; and liability and immunity therefrom. *See id.* §§ 361.001-.992.

**B. Where did the legislature place section 361.0961 within the SWDA's overall structure?**

The first and lengthiest subchapter regarding the TCEQ's specific responsibilities under the SWDA relates to the TCEQ's permitting and regulation of solid waste facilities. *See id.* §§ 361.061-.126. Subchapter C, "Permits," generally authorizes the TCEQ to "require and issue permits authorizing and governing the construction, operation, and maintenance of the solid waste facilities used to store, process, or dispose of solid waste under this chapter." *Id.* § 361.061. Subchapter C also requires the TCEQ to ensure its permitting and regulation of solid waste facilities are compatible with local solid waste management plans. *Id.* § 361.062. Several sections in subchapter C relate to the use of containers to store, transport, process, and dispose of solid waste and authorize the TCEQ to regulate and permit such activities. *See, e.g.*, *id.* §§ 361.0905(e)(8), 361.091(a).[1]

---

[1] Pursuant to its authority under the SWDA, the TCEQ has adopted numerous rules pertaining to *solid waste containers* and the packaging of solid waste, and regulating how solid waste is stored and packaged in those containers. *See, e.g.*,

Also contained in subchapter C is the section at issue, section 361.0961, which provides:

(a) A local government or other political subdivision may not adopt an ordinance, rule, or regulation to:

(1) prohibit or restrict, for solid waste management purposes, the sale or use of a container or package in a manner not authorized by state law;

(2) prohibit or restrict the processing of solid waste by a solid waste facility, except for a solid waste facility owned by the local government, permitted by the commission for that purpose in a manner not authorized by state law; or

(3) assess a fee or deposit on the sale or use of a container or package.

---

30 TEX. ADMIN. CODE §§ 330.3(34) (Texas Comm'n on Envtl. Quality) (defining "container" as "Any portable device in which a material is stored, transported, or processed."); 330.7(c)(1) (granting permits by rule for persons that compact and transport waste in enclosed containers to a Type IV facility under certain conditions based, in part, on information regarding container size); 330.7(c)(2) (granting permits by rule for transporters using enclosed containers to collect and transport brush, construction or demolition wastes, and rubbish along special collection routes); 330.7(e) (requiring ash from incinerated animals to "be stored in an enclosed container that will prevent release of the ash to the environment"); 330.15(e)(6) (generally prohibiting containers of liquid waste except those containers "similar in size to that normally found in household waste" or "designed to hold liquids for use other than storage"); 330.133(f)(1) (requiring Type IV landfills that accept rubbish to establish a written procedure to ensure no containers with any putrescible wastes are accepted); 330.133(g) (generally prohibiting Type IV landfills from accepting wastes from completely enclosed containers); 330.169 (regulating Type IV landfills' acceptance of waste in enclosed containers based on whether the container has all required approvals and/or permits and is accepted at designated times on designated days); 330.171(c)(3)(E)-(G) (regulating the particular types of containers and packaging of containers used to contain regulated asbestos-containing material (RACM)); 330.209(a) (requiring the use of storage containers "of an adequate size and strength, and in sufficient numbers, to contain all solid waste generated in the period of time between collections"); 330.209(c) (requiring certain waste and recycled materials to be stored in enclosed containers); 330.211 (requiring all solid waste containing food waste to "be stored in covered or closed containers that are leakproof, durable, and designed for safe handling and easy cleaning"); 330.213 (requiring citizen's collection stations to be provided "with the type and quantity of containers compatible with areas to be served"); 330.245(c) (requiring all solid waste to "be stored in odor-retaining containers and vessels"); 330.671(a)(1) (subjecting those who deliver waste in enclosed containers to a Type 4 facility to certain fees); 330.991(a)(3) (permitting controls to minimize matter emissions "includ[ing] loading and storing in enclosed containers"); *see also* §§ 326.17 (requiring health-care related facilities to identify and segregate medical waste prior to packaging the medical waste); 326.19(a) (requiring generators of medical waste to "place the container which contains medical waste in an outer container that is rigid, leak resistant, impervious to moisture, of sufficient strength to prevent tearing and bursting under normal conditions of use and handling, and sealed to prevent leakage"); 326.21 (requiring labeling of medical waste containers); 326.41(c)(2) (permitting large quantity generators that treat their own medical waste to identify certain treated waste "by the use of color-coded, disposable containers"); 326.43 (regulating hospitals' packaging of medical waste); 326.53(b)(6)(A)(iii) (granting registration by rule for transporters of medical waste and requiring the transportation unit to "carry spill cleanup equipment including . . . leak-proof containers or packaging materials"); 326.53(b)(15) (prohibiting transporters of medical waste from accepting containers of waste that are leaking or damaged "unless or until the shipment has been repackaged"); 326.53(b)(19) (requiring transporters of medical waste to repackage containers damaged in a traffic accident); 326.55(a), (b)(6)(A) (granting registration by rule for mobile treatment units conducting on-site treatment of medical waste and requiring such units to carry "leak-proof containers or packaging materials"); 326.75(d)(3) (requiring containers of medical waste that are mechanically handled to "be designed to prevent spillage or leakage during storage, handling, or transport").

*Id.* § 361.0961(a). Section 361.0961 "does not prevent a local government or other political subdivision from complying with federal or state law" or "limit the authority of a local government to enact zoning ordinances." *Id.* § 361.0961(b), (c).

**C. When we consider the legislature's placement of section 361.0961 within subchapter C, may section 361.0961 be reasonably construed as not conflicting with the Ordinance?**

The issue is not whether the SWDA and the Ordinance may be construed as conflicting with each other, but whether they may reasonably be construed as *not* conflicting with each other and both given effect. *See BCCA Appeal Grp., Inc.*, 2016 WL 1719182, at *2. We must determine whether section 361.0961, which provides that cities "may not . . . adopt an ordinance . . . to prohibit or restrict, for solid waste management purposes, the sale or use of a container or package in a manner not authorized by state law," can be given no other reasonable construction than one that conflicts with the Ordinance, which makes it "unlawful for any commercial establishment to provide checkout bags to customers." Laredo, Tex., Code of Ordinances § 33-455; *accord BCCA Appeal Grp., Inc.*, 2016 WL 1719182, at *2. Section 361.0961 would preempt the Ordinance only if section 361.0961 and the Ordinance applied to the same containers in irreconcilable conflict with each other. *See State v. DeLoach*, 458 S.W.3d 696, 698 (Tex. App.—San Antonio 2015, pet. ref'd) (citing *RCI Entm't, Inc. v. City of San Antonio*, 373 S.W.3d 589, 596 (Tex. App.—San Antonio 2012, no pet.)).

The legislature consistently used the term "container" in subchapter C of the SWDA to refer to *solid waste containers* used to store, transport, process, or dispose of solid waste or to those containing solid waste:

- The definition of "disposal," which is used in the subchapter C, describes solid waste in terms of being "containerized or uncontainerized," TEX. HEALTH & SAFETY CODE ANN. § 361.003(7);

- Subchapter C, "Permits," authorizes the TCEQ to "act on an application to renew a permit for storage of hazardous waste in containers, tanks, or other closed vessels" in specified circumstances, *id.* § 361.088(e)(1);

- Subchapter C confers responsibility upon the TCEQ for regulating medical waste and mandates that TCEQ adopt permit requirements "related to . . . the storage of waste . . . to ensure the use of sufficient containers between collections," *id.* § 361.0905(e)(8);

- Subchapter C generally prohibits some permitted landfills from "accept[ing] solid waste that is in a completely enclosed container or enclosed vehicle," *id.* § 361.091(a); and

- Subchapter C authorizes a permit holder to accept certain solid waste when it has "been transported to the land application unit in a covered container with the covering firmly secured at the front and back," *id.* § 361.121(l).[2]

Because the legislature consistently used the term "container" in subchapter C to refer to *solid waste containers* used for storing, transporting, processing, or disposing of solid waste, the word "container" in section 361.0961 may reasonably be construed to have the same meaning. *See Brown*, 121 Tex. at 500, 50 S.W.2d at 263; *Sw. Props., L.P.*, 989 S.W.2d at 71. Construing "container" in section 361.0961 as *any* container that might become solid waste is out of harmony and inconsistent with the manner in which the legislature used "container" in all other instances in subchapter C. Thus, "container" in section 361.0961 may reasonably be construed as limited to *solid waste containers* used to store, transport, process, or dispose of solid waste. *See Barr*, 562 S.W.2d at 849 (noting courts may not give "one provision . . . a meaning out of harmony or inconsistent with other provisions, although [the provision] might be susceptible of such a construction if standing alone."). This is in contrast to chapter 369 of the Health & Safety Code

---

[2] In promulgating rules to enforce chapter 361, the TCEQ has defined and used the term "container" consistent with this limited construction of section 361.0961. *See* 30 TEX. ADMIN. CODE § 330.3(34) (defining "container" as including "portable device[s] in which a material is stored, transported, or processed"). With the exception of discarded containers that were used to contain certain chemicals, the TCEQ also consistently uses the term "container" to refer to *solid waste containers*. *See id.* §§ 330.03(20), (25), (44), (111), (146), (147), (148)(g), (148)(k), (157), (158), (162); 330.7(c), (c)(1)(A), (c)(2), (e)(3), (i)(1)(E)(iii); 330.11(e)(5); 330.15(e)(6); 330.133(f)(1), (g); 330.155; 330.169; 330.171(c)(3)(E)-(H), (c)(5); 330.209(a), (c); 330.211; 330.213(a); 330.245(c); 330.671(a)(1); 330.991(a)(3)(A).

and section 361.425(a)(1), which clearly relate to containers that might become solid waste. *See* TEX. HEALTH & SAFETY CODE ANN. § 361.425(a)(1); *id.* §§ 369.001-.003 (West 2016).

Given the SWDA's structure and the placement of section 361.0961 within it, the purpose of section 361.0961 may reasonably be understood as preventing local governments from interfering with the availability and the proper use of *solid waste containers* and the TCEQ's permitting and regulation of solid waste facilities' activities and medical waste management. *See Cont'l Cas. Ins. Co.*, 19 S.W.3d at 398; *Lumbermens Mut. Cas. Co.*, 971 S.W.2d at 63. Subchapter C authorizes the TCEQ to regulate and issue permits for solid waste facilities. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 361.061-.126. Some provisions of subchapter C relate to the containerization of solid waste within the TCEQ's permitting and regulatory scheme and are intended to ensure the availability and the proper use of *solid waste containers* for storing hazardous waste at facilities and medical waste between collections. *See, e.g.*, *id.* §§ 361.088(e)(1), 361.0905(e)(8), 361.091(a), 361.121(l). Subsection C also requires the TCEQ to ensure compatibility between its waste management plans and local governments' waste management plans. *Id.* § 361.062(a). Thus, section 361.0961 may reasonably be construed as prohibiting local governments from banning or restricting the sale or use of *solid waste containers* for the storing, transporting, processing, and disposal of solid waste because doing so might create a patchwork of local regulations that compromise the TCEQ's state-wide permitting and regulatory scheme.

The TCEQ's permitting and regulatory authority is in no way compromised by the Ordinance. Although the Ordinance restricts the use of checkout bags, the Ordinance expressly excludes waste bags that are intended for use as *solid waste containers*. *See* Laredo, Tex., Code of Ordinances §§ 33-454, 33-457. The Ordinance expressly excludes waste bags in the definition of "checkout bags" and exempts "packages of multiple bags intended for use as garbage." *Id.* The

Ordinance's restriction on the use of checkout bags does not restrict the use of any *solid waste containers* or containers used to store, transport, process, and dispose of solid waste or medical waste. *See id.* Therefore, the Ordinance does not interfere with the availability or the proper use of *solid waste containers* or the TCEQ's permitting and regulation of solid waste facilities or medical waste management.

**D. Does construing section 361.0961 in isolation yield a reasonable construction?**

Construing "container" in section 361.0961 as *any* container that might become solid waste requires viewing section 361.0961 in isolation. The majority construes "container" by referring to dictionary definitions and does not address subchapter C's provisions that demonstrate "a different meaning is apparent from the context." *See BCCA Appeal Grp., Inc.*, 2016 WL 1719182, at *3 (noting courts do not rely on the plain meaning of the text as the sole expression of legislative intent when a different meaning is apparent from the context). When the SWDA is viewed as a whole, it becomes apparent that such a construction is not reasonable. *See id.* at *6 (noting courts must construe statutes as a whole and may not construe provisions in isolation ).

The majority's construction contradicts the SWDA's express declaration that it is the public policy goal of the state to eliminate the generation of solid waste "through source reduction." *See* TEX. HEALTH & SAFETY CODE ANN. § 361.022(a). "Source reduction" includes "changing a process for . . . providing a service so that less material is disposed of." *Id.* § 361.421(9)(B). The Ordinance requires commercial establishments to change the process for providing checkout services so that fewer checkout bags are disposed of. *See* Laredo, Tex., Code of Ordinances §§ 33-451, 33-455. By holding that section 361.0961 preempts the Ordinance, the majority construes section 361.0961 as prohibiting a type of source reduction, the purpose of which

is to reduce solid waste generated by the discarding of checkout bags. *Id.* §§ 33-451. The majority's construction of section 361.0961 in isolation is not reasonable because a court's construction of a statute should be consistent with the statute's underlying purpose and the policies it promotes. *See N.W. Nat'l Cty. Mut. Ins. Co.*, 18 S.W.3d at 721.

The Laredo Merchants Association argues section 361.0961 is a "carve out" to the state's public policy goal of eliminating the generation of municipal solid waste through source reduction. Merchants' argument has no merit or support under a holistic construction of the SWDA. No other provision of the SWDA expressly prohibits or regulates, or authorizes the TCEQ to prohibit or regulate, municipal source reduction. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 361.001-361.992. The SWDA's provisions relating to source reduction require the TCEQ to develop a public awareness program and to establish rules to measure state-wide source reduction. *See id.* §§ 361.0202(b), 361.0216, 361.422(a), (c). When measuring municipal source reduction, the SWDA permits the TCEQ to consider "community source reduction," including changes in processes for providing consumer services so that less material is used. *Id.* §§ 361.421(9)(B), 361.422(c). The SWDA expressly contemplates municipal source reduction being community efforts—and the SWDA's preferred alternative to solid waste management—to achieve the state's declared public policy goal of eliminating the generation of solid waste. *See id.* §§ 361.022(a), 361.422(c).

Unlike the provisions of the SWDA that expressly relate to municipal source reduction, section 361.0961 is placed within the framework of subchapter C relating to permits. Subchapter C does not contain any reference to "source reduction" or any provision relating to source reduction. *See id.* §§ 361.061-.126. When a court construes a statute, the court must account for the statute's structure and the relevant section's placement within the statute. *See Cont'l Cas. Ins.*

*Co.*, 19 S.W.3d at 398; *Lumbermens Mut. Cas. Co.*, 971 S.W.2d at 63. Subchapter C relates to the TCEQ's permitting and regulation of solid waste facilities, coordinating TCEQ and local governments' management plans, and local governments' powers and duties relating to the TCEQ's permitting and regulatory scheme for those facilities. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 361.061-.126. Subchapter C also regulates (and authorizes the TCEQ to regulate) "the handling, transportation, storage, and disposal of medical waste" that is generated by health care-related facilities. *See id.* §§ 361.003(18-a), 361.0905. Subchapter C's scope is limited to regulating solid waste facilities' activities and the management of medical waste. *See id.* §§ 361.061-.126. If section 361.0961 is viewed in its statutory context, it may reasonably be construed—like all other sections in subchapter C—as pertaining to medical waste management and the activities of solid waste facilities and not to municipal source reduction. *See Greater Hous. P'ship*, 468 S.W.3d at 61; *Cont'l Cas. Ins. Co.*, 19 S.W.3d at 398; *Lumbermens Mut. Cas. Co.*, 971 S.W.2d at 63. Thus, Merchants' argument requires viewing section 361.0961 in complete isolation and not within the framework of subchapter C and the entire context of the SWDA. The Supreme Court of Texas has rejected this method of construing a statute to determine whether it preempts an ordinance. *See BCCA Appeal Grp., Inc.*, 2016 WL 1719182, at *2

## II. CONCLUSION

Section 361.0961 of the SWDA may reasonably be construed as applying to *solid waste containers* used to store, transport, process, or dispose of solid waste, particularly those used by solid waste facilities and those used in medical waste management. This construction is supported by the manner in which the legislature consistently used the word "container" and the legislature's placement of section 361.0961 within the SWDA's statutory structure. The majority does not

account for this context. The majority's construction also contradicts the state's public policy goal of encouraging source reduction to reduce the generation of municipal solid waste.

The Ordinance does not conflict with the SWDA. Instead, the Ordinance advances the state's public policy goal by requiring commercial establishments to change the process by which they provide checkout services to customers. Simply stated, the Ordinance does not apply to *solid waste containers*. Instead, by promoting source reduction, the Ordinance is ancillary to and in harmony with the general scope and the purpose of the SWDA. *See id.* Because I conclude section 361.0961 may be reasonably construed as not conflicting with the Ordinance, I would hold the SWDA does not preempt the Ordinance. *See id.* at *2-3.

Luz Elena D. Chapa, Justice