## Texas Bank & Trust Company v. Chas. O. Austin, Commissioner of Banking.

### No. 4357.   Decided February 3, 1926.

### (280 S. W., 161).

**1.—State Bank—Security of Depositors—Deposit of Bonds from Bank's Assets.**

The bonds by deposit of which a state bank is permitted by Act of Feb. 7, 1895 (Rev. Stats., 1911, Art. 491, as amended by Laws, 39th Leg., Ch. 9, Sec. 1, p. 27), to secure its depositors by the bond security, instead of the state guaranty system, may be those owned by the bank itself and constituting a part of its assets.   (P. 202.)

**2.—Same—Statutory Construction.**

Some effect should be given to every express declaration of legislative intent.   Amendment, in simple language, of an existing statute is not to be so construed as to make no change in the former law.   (P. 203.)

**3.—Same.**

The construction of language in a statute similar to that here involved long and uniformly acted on by state authorities is considered in arriving at the intent of the Legislature.   (P. 204.)

Original application to the Supreme Court by the Texas Bank & Trust Co. for writ of mandamus against Austin as State Commissioner of Banking.

*Harris & Harris* and *Hart, Patterson & Hart,* for relator.

Where the language used in a statute is plain and unambiguous, subtle or forced constructions are never admissible to limit or extend the meaning of the language employed.   City of San Antonio v. Routledge, 102 S. W., 756; Teat v. McGaughey, 85 Texas, 478; Raines v. Simpson, 50 Texas, 495; Railway Co. v. Texas, 54 S. W., 1031; Engelking v. Von Wamel, 26 Texas, 469; Fire Assn. v. Love, 101 Texas, 376; Read Bros. & Co. v. Levy & Co., 30 Texas, 738.

*Cockrell, McBride, O'Donnell & Hamilton,* and *Holland, Bartlett, Thornton & Chilton,* on behalf of banks similarly interested, filed, by permission, briefs and argument as *amici curiae,* in support of the positions of relator.

*Dan Moody,* Attorney-General, and *Jno. W. Goodwin,* Assistant, for respondent.

A state bank operating under the bond security system cannot secure its depositors by the hypothecation or pledging of its own assets. Rev. Stats, Arts. 491, 494, 504; Rev. Stats., Art. 491, as amended by Acts of the 39th Legislature, Senate Bill 112; Commercial Bank & Trust Co. v. Citizens Trust & Guaranty Co., 156 S. W., 160.

The statutes of this State contemplate that a bank electing to secure its depositors by the bond security system should execute a bond payable and conditioned as required by Rev. Stats., Art. 504, and that the bond so executed should be secured in one of the ways prescribed by Rev. Stats., Art. 491, as amended by Acts of the 39th Legislature. Rev. Stats., Art. 491, as amended by Acts of 39th Legislature; Rev. Stats., Art. 504; See Bouvier's Dictionary, heading "Collateral Security."

MR. JUSTICE GREENWOOD delivered the opinion of the court.

The sole question presented by the pleadings in this suit for mandamus is whether a bank and trust company, incorporated under the laws of Texas, is entitled to change its system of doing business and its mode of guaranteeing deposits from the guaranty system to the bond security system, on tendering to the Banking Commissioner a duly authorized application for such change and bonds of the United States, approved by the county judge of the county of the company's domicile and by the Banking Commissioner, in an amount equal to the amount of its capital stock—when it is made to appear that such bonds belong to the company.

Our conclusion is that Article 475 of the Revised Statutes of 1925 warrants the deposit with the Commissioner of Banking of United States bonds and of certain municipal and state bonds, by a state bank or trust company, to guarantee deposits, notwithstanding the bonds constitute a part of the assets of the bank or trust company. No other conclusion seems consistent with principles too long established to admit of serious question.

As the law stood before its amendment in 1925, a state bank or trust company was permitted to protect its depositors under the bond security system by filing with the Commissioner of Insurance and Banking, for and on behalf of depositors, "a bond, policy of insurance or other guaranty of indemnity" in an amount equal to the amount of its capital stock.

By amendment enacted in Section 1, of Chapter 91, of the Acts of the 39th Legislature, carried into the Revised Statutes

as Article 475, each state bank or trust company was granted the right to do business under the bond security system, at its election, on filing with the Commissioner of Banking, for and on behalf of lawful depositors, "a bond, policy of insurance, or bonds of the · United States, or municipal or district bonds approved by the Attorney General's Department, or other guaranty of indemnity in an amount equal to the amount of its capital stock."

Now it is perfectly obvious that the statute before it was amended granted to each bank or trust company every right granted by the amended statute, should the amendment be held to have the meaning contended for by respondent. For, who would deny that United States bonds or district or municipal bonds, approved by the Attorney General's Department, when pledged by owners other than the bank or trust company, to secure depositors, would constitute a "guaranty of indemnity" other than the bond, with sureties, of the bank or trust company, or an insurance policy? Thus it appears that to adopt the interpretation of the amendment suggested by respondent is to give absolutely no significance or effect to the addition in the amendment of the words "or bonds of the United States or municipal or district bonds approved by the Attorney General's Department." And yet no rule of statutory construction is more universally recognized than that which compels the courts to give some effect to every express declaration of legislative intent. The rule is clearly stated in Missouri, K. & T. Ry Co. of Texas v. Mahaffey, 105 Texas, 398, 150 S. W., 881, citing Justice Harlan's opinion for the United States Supreme Court in Montclair v. Ramsdell, 107 U. S., 152, 27 L. Ed., 431, where it is said:

"It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding if it may be, any construction which implies that the Legislature was ignorant of the meaning of the language it employed."

Indeed, we could not ignore the rule and not disobey the command of the statute to look diligently for some intention on the part of the Legislature in adopting an amendment to an existing law. Subdivision 6, of Article 10, of the Revised Statutes of 1925.

This case would seem determinable by merely giving their ordinary signification to simple words. The language of the statute is that the bank or trust company may file certain bonds. The mere filing by the bank or trust company of bonds to which

it did not have right or title would be unavailing for the protection of the depositors, which is the ultimate aim of the law. The Legislature could not have intended to impose obligations on strangers to the bank or trust company nor charges on their property without using any language referring in the remotest degree to such obligations or charges.

But, when we look to similar language in a similar statute, in the light of its application for years by those charged with its administraton, there seems no room for reasonable doubt of the intent of the lawmakers. By the Acts of 1919, Chapter 145, Section 1, the Legislature provided for protection to the State as a depositor of funds in the state and national banks of Texas. Protection was furnished by the deposit with the State Treasurer of certain securities, including bonds of the United States and bonds of districts and municipalities of the State. Article 2423, Complete Texas Statutes; Article 2529, Revised Statutes of 1925. Under this statute, millions of dollars in bonds of the United States, and in bonds of districts and municipalities of the State, belonging to state banks and trust companies, have been deposited,—and no one has questioned the validity of such deposits.

Our conclusion is further sustained if we look to the origin and development of the public policy of depositing government bonds to secure favored bank creditors. It has long been the policy of the United States to secure favored creditors of national banks and of federal reserve banks, viz.: the holders of their circulating notes, by a deposit of bonds of the United States. In all such cases, the deposited bonds are first acquired by the banks.

It has been the legislative policy of Texas since. our present state banking system was inaugurated to treat the general depositor as entitled to favored treatment. Such is the essential purpose of both the guaranty fund and the bond security systems. The expression last year of the State's public policy, in the statute under consideration, was meant, we think, to add to the depositor's security by clearly authorizing the pledge for his special benefit of securities owned by a state bank or trust company and universally regarded as of the highest type.

The relator comes within the terms of the statute conferring upon it the right to use its United States bonds in changing its system of protecting its depositors from the guaranty fund system to the bond security system. The mandamus will issue as prayed for by relator.