

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

May 30, 1963

Honorable Jesse James
State Treasurer of Texas
Austin, Texas

Opinion No. C- 87
Opinion No. WW-1498-A

Re: Whether credit unions should
report personal property subject
to escheat under Article 3272a,
V.C.S., or report their dormant
or inactive accounts under
Article 3272b, V.C.S.

Dear Mr. James:

We have been requested to reconsider Attorney General's
Opinion WW-1498 from the standpoint of the possibility that the
language used therein may conceivably be construed as holding the
credit unions to be banks or banking institutions. Since it was
not the intent of this office to so hold, and in order to clarify
any misconception which has resulted from the language used
therein, we hereby withdraw WW-1498 as originally released and
substitute the following as the opinion of this office.

You have requested the opinion of this office by asking
the following question, quoted from your letter of November 27,
1962:

"Will you please advise this department,
by official opinion, whether credit unions,
organized either under the laws of the State of
Texas or of the United States, should report
personal property subject to escheat under Article
3272a, R.C.S., or report their dormant or inactive
accounts under Article 3272b, R.C.S."

Article 3272a, Vernon's Civil Statutes, requires all
"persons" to report personal property in their possession which
is subject to escheat. Section 1(a) of that Article defines
"person" and is as follows:

"(a) The term 'person' as used in this
Article means any individual, corporation, business
association, partnership, governmental or political
subdivision or officer, public authority, estate,
trust, trustee, officer of a court, liquidator, two
(2) or more persons having a joint or common interest,
or any other legal, commercial, governmental or

-423-

political entity, <u>except banks, savings and loan associations, banking organizations or institutions.</u>"  (Emphasis supplied.)

If credit unions are excluded from Article 3272a, by the provision quoted above, they would then come within the scope of Article 3272b, Vernon's Civil Statutes. Article 3272b, applies specifically to holders of personal property which are excluded in Article 3272a, Section 1(a), supra. These holders are termed "depositories" in Article 3272b, Section 1(a), which states:

"(a)  The term depository as used in this Article means any <u>bank, savings and loan association, banking institution or organization which receives and holds for others deposits of money or its equivalent in banking practice or other personal property in this State,</u> or in other States for residents last known to have resided in this State."  (Emphasis supplied.)

This provision uses the same generic words in defining depositories as Article 3272a, Section 1(a), uses in specifying those entities excepted from its application. It will be noted that although Article 3272b, Section 1(a), uses additional words in describing depositories, these additional words are merely a clarification of what the Legislature meant by the terms "banking organizations or institutions" in both Article 3272a and 3272b.

Obviously, a credit union is not a bank, nor is it a savings and loan association nor banking institution in any strict sense. The question then becomes whether a credit union is "an organization which receives and holds for others deposits of money or its equivalent in banking practice" within the meaning intended by the Legislature in Article 3272b.

Title 46, V.C.S., authorizes the formation of credit unions and places them under the supervision of the State Banking Board and the Banking Commissioner. See Articles 2463, 2465, 2484 and 2484b, V.C.S.

Federal credit unions are organized under the provisions of 12 U.S.C.A. 1753, and subject to the provisions of Title 12, Chapter 14, U.S.C.A. The definition of a federal credit union in 12 U.S.C.A. 1752, is the same as that found in Article 2461, V.C.S., defining state credit unions. Federal credit unions are under the supervision of the Bureau of Federal Credit Unions in the Department of Health, Education and Welfare, and the restrictions and limitations imposed by Chapter 14 and administered by that Bureau are very similar to the Texas statutes applicable to credit unions.

Article 2462, V.C.S., provides that "A credit union may receive the savings of its members in payment for shares or as deposits . . . It may lend money to its members within the limits and subject to the restrictions provided by law . . ." Article 2466, V.C.S., provides that "The by-laws of the credit unions shall prescribe: . . . 6. The conditions on which deposits may be received and withdrawn." In Article 2474, V.C.S., we find that "Shares may be issued and deposits received in the name of a minor and such shares and deposits may, in the discretion of the directors, be withdrawn by such minor or by his parent or guardian . . ."

A federal credit union may lend money to members, to the United States of America, or other specified borrowers. It may receive payments from its members on shares, and may borrow from any source amounts up to 50% of its paid-in and unimpaired capital and surplus. These powers are provided in 12 U.S.C.A. 1757. Presumably, a federal credit union may borrow money by receiving deposits from members or others.

It is apparent that the nature of a federal credit union is not significantly different from that of a state credit union, other than being organized under federal law and subject to federal regulation.

The Legislature did not limit the scope of Article 3272b, Section 1(a), to the words "bank" and "savings and loan association," but included the words "organization which receives and holds for others deposits of money or its equivalent in banking practice." One of the principal rules of statutory construction, which we consider applicable here, is found in Texas Bank & Trust Co. v. Austin, 115 Tex. 201, 280 S.W. 161, 162 (1926):

"And yet no rule of a statutory construction is more universally recognized than that which compels the courts to give some effect to every express declaration of legislative intent. The rule is clearly stated in M.K.&T. Ry. Co. of Texas v. Mahaffey, 105 Tex. 398, 150 S.W. 881, citing Justice Harlan's Opinion for the United States Supreme Court in Montclair v. Ramsdell, 107 U.S. 152, 2 S.Ct. 395, 27 L.Ed. 431, where it is said:

'It is the duty of the court to give effect, if possible to every clause and word of a statute, avoiding, if it may be, any construction which implies that the Legislature was ignorant of the meaning of the language it employed.'"

If the words "an organization which receives and holds for others deposits of money or its equivalent in banking practice" are to have meaning when used in addition to the terms "bank" and "savings and loan association," in Article 3272b, we believe that credit unions are within the meaning of those words. Therefore, it is our opinion that both federal credit unions and state credit unions should comply with Article 3272b, and report their dormant and inactive accounts pursuant thereto.

## SUMMARY

Credit unions, organized under the laws of the State of Texas or of the United States, should report their dormant or inactive accounts under Article 3272b, V.C.S., rather than report personal property subject to escheat under Article 3272a, V.C.S.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By:

J. Albert Pruett, Jr.
Assistant Attorney General

JAPjr/ca

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman
W. O. Shultz
Wm. E. Allen
Marietta Payne
Malcolm Quick

APPROVED FOR THE ATTORNEY GENERAL
BY: Albert P. Jones