

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

August 22, 1990

Honorable Dan V. Dent
District Attorney
P. O. Box 400
Hillsboro, Texas    76645

Opinion No.   JM-1212

Re:  Location of a prisoner work program facility established by section 496.054 of the Government Code    (RQ-1884)

Dear Mr. Dent:

You ask two questions relating to the housing of inmates who are participants in the "Work Program Plan" established by the Board of Pardons and Paroles Division of the Texas Department of Criminal Justice.

Subchapter C of chapter 496 of the Government Code authorizes the Board of Pardons and Paroles Division to establish the work program plan. Under the plan, eligible persons in the custody of the Institutional Division of the Department of Criminal Justice, either in a unit of the institutional division or a county jail, are granted the privilege of working outside the state prison system at a work facility owned and operated by a county or municipality. Gov't Code §§ 496.052(b), 496.053. Persons assigned to a work facility under the plan remain in the legal and technical custody of the pardons and paroles division. Id. §§ 496.053, 496.054(b)(2).

To be eligible to receive participants in the program, a facility must be a "secure community residential facility," allowing the supervision and monitoring of the residents' interior and exterior movements and activities. Id. §§ 496.051(4), 496.052(a). It must be certified by the American Correctional Association, provide on-site industry programs allowing full-time participation by residents of the facility, and it must be operated pursuant to contract between the pardons and paroles division and the county or municipality. Id. § 496.052(a), (b). The county or municipality may subcontract with a private vendor to construct, operate, or manage the facility. Id. § 496.052(d).

The pardons and paroles division is required to grant work program privileges under "such rules, regulations, and conditions as provided by this Act." <u>Id.</u> § 496.051. Rule-making authority is granted by section 496.054(b)(3), which provides that the "Texas Board of Criminal Justice shall adopt rules for the conduct of residents transferred under this Act."

Subsection 3(a) of section 496.054, entitled "Quartering of Work Program Residents," is the focus of your inquiry. It provides the following:

> The pardons and paroles division shall, as the need becomes evident, designate facilities in the area of such resident's employment, for quartering residents with work program privileges. A resident may not be granted work program privileges until suitable facilities for quartering such resident have been provided in the area where the resident has obtained employment or has an offer of employment, or in a designated work facility that combines employment facilities and living quarters for the resident and is <u>located within 100 miles of that resident's recorded place of residence</u>. (Emphasis added.)

Subsection 3(a) forbids the relocation of an inmate to a work facility unless suitable quarters are available in either of two settings. Your questions are directed to the second set of circumstances.

You first ask what constitutes a work program participant's "recorded place of residence" for purposes of determining the area to be served by a designated work facility. You also ask whether a person in the custody of the pardons and paroles division may be quartered in a work facility that is more than 100 miles from the person's "recorded place of residence."

Information furnished to us indicates that your questions are prompted by proposals of the city of Itasca and Red River County to construct separate work program facilities. We are advised that the pardons and paroles division has computed the eligible work program population by construing subsection 3(a) of section 496.054 to provide that residents of a county are eligible if any part of the county is within 100 miles of the work program facility. In effect, the pardons and paroles division construes the

phrase "recorded place of residence" to mean the county in which the person maintains residence. The importance of this decision is illustrated by applying the definition to the competition between Red River County and the city of Itasca.

A brief submitted by the city of Itasca contains a number of exhibits, including maps and tables showing the number of eligible work program participants in counties within a 100-mile radius of the proposed sites. The maps show that only a small portion of Dallas County is within a 100-mile radius of Clarksville, which we understand is the site of the Red River County facility. All of Dallas County is within a 100-mile radius of Itasca.

Under the pardons and paroles division's reading of subsection 3(a), all persons eligible to participate in the work program plan who reside anywhere in Dallas County are included in the eligible population for the Red River County facility. Assuming both facilities are awarded contracts by the pardons and paroles division, any inmate from Dallas County assigned to one facility reduces the pool of potential residents at the other.

The city of Itasca's brief frames the issue thus:

> The issue then is whether the fact that the 100-mile radius of the Red River site touches a small portion of Dallas County serves to bring everyone within that county within that radius.

The term "recorded place of residence" is not defined in subchapter C of chapter 496, nor is the pardons and paroles division given specific guidance in determining a work program participant's recorded place of residence. In ascertaining the meaning of this language, it is appropriate to consider, among other things, legislative history, the common law, laws on the same or similar subjects, the object sought to be attained, the consequences of a particular construction of the language, and the administrative construction of the term. See Gov't Code § 311.023.

The legislative history of the work program plan does not resolve the issue of the meaning of "recorded place of residence." Subchapter C of chapter 496 was enacted as part of a comprehensive bill reorganizing and amending several laws governing the criminal justice system. H.B. 2335, Acts 1989, 71st Leg., ch. 785, § 4.19, at 3523. The provisions

authorizing the work program plan were added in conference committee; there is no recorded legislative history available. The substance of these provisions was originally proposed during the same legislative session by a separate bill, House Bill 2383. The legislative history of that proposal suggests one meaning of the phrase "recorded place of residence."

In its original form, House Bill 2383 made no reference to the residence of an eligible inmate or the placement of an inmate in a work facility within a specified distance of the inmate's residence. A committee substitute first proposed that an eligible inmate could be placed in a work facility that was within 80 miles of the inmate's recorded place of residence.

Testimony of the author of the bill at the public hearing on House Bill 2383 reveals that the work program plan was inspired by recommendations of the Legislative Budget Board to the Texas Department of Corrections (now the institutional division). Public Hearing on H.B. 2383 Before the House Comm. on Corrections, 71st Leg. (April 19, 1989) (testimony of Rep. Bob Melton) (tape available through House Technical Services). The feature of the work program receiving the greatest commentary was its effect on families and dependents of work program participants. The work program, it was reported, would contribute to the preservation of the family unit by allowing the inmate to contribute to his family's support and by allowing the family greater and closer access to the inmate while he served the remainder of his sentence. Id.; Public Hearing on H.B. 2383 Before the House Comm. on Corrections, (April 19, 1989) (testimony of Ann Lynn McElroy) (tape available through House Technical Services).

The recording of this hearing contains no testimony confirming the pardons and paroles division's construction of the phrase "recorded place of residence." Indeed, the only available public record of the legislative history of the work program provisions suggests that the then 80-mile radius should be measured from the actual residence of the inmate's family or dependents or the actual residence in which the inmate intends to settle following release from custody.

The language of subsection 3(a) of section 496.054 was changed in the conference committee on House Bill 2335 to its present form. The pardons and paroles division has supplied us with a copy of a letter from Senator Bob

McFarland who co-chaired the conference committee that added the work program provisions to House Bill 2335. Senator McFarland writes that prior to adoption of the final conference committee report he advised a member of the committee that he understood the bill would bring Dallas within the area served by the Red River County facility. It is inappropriate, however, to consider post-enactment statements of legislative intent when construing an ambiguous statute. See, e.g., Commissioners' Court El Paso County v. El Paso County Sheriff's Deputies Ass'n, 620 S.W.2d 900 (Tex. Civ. App. - El Paso 1981, writ ref'd n.r.e.).

Where legislative history is inconclusive one authority concludes that it is appropriate to decide an issue of statutory construction solely with intrinsic aids rather than legislative history. 2A Singer, Sutherland Statutory Construction §§ 48.01, 48.02 (Sands 4th ed. 1984). We think this rule is inappropriate here, since the Code Construction Act permits consideration of legislative history in addition to other factors in ascertaining the meaning of an ambiguous statute. See Gov't Code § 311.023. The preponderance of these additional factors supports a narrow construction of the phrase "recorded place of residence."

Section 311.023 of the Government Code allows consideration of laws on the same or similar subjects and the common law in arriving at the meaning of a statute. It is also appropriate to examine the meaning of the same or similar language in other statutes. See Texas Bank & Trust Co. v. Austin, 280 S.W. 161 (Tex. 1926). When the same or similar language is employed in the same connection in different statutes, it will generally be construed to have the same meaning in both unless a different meaning is indicated. See Brown v. Darden, 50 S.W.2d 261 (Tex. 1932). This rule is particularly applicable where the meaning of the language has been judicially determined. Id.

The operative component of the phrase "recorded place of residence" is "residence."[1] For purposes of determining

---

1. Our research has shed no light on the meaning of the word "recorded" in the phrase "recorded place of residence." By "recorded," the legislature may have meant the inmate's place of residence as reflected in the records of the institutional division or pardons and paroles division
(Footnote Continued)

tuition rates at state institutions of higher education, residence is defined simply as "domicile." Educ. Code § 54.052(a)(1). The Election Code also defines residence as "domicile," but adds that the term means "one's home and fixed place of habitation to which he intends to return after any temporary absence." Elec. Code § 1.015(a).[2] See also Code Crim. Proc. art. 18.20, § 1(13) (defining "residence" in the same terms for purposes of statute governing interception of oral, wire, or electronic communications by law enforcement agencies).

The courts caution that residence is an elastic term that is difficult to define. Mills v. Bartlett, 377 S.W.2d 636 (Tex. 1964). Residence may be temporary or permanent in nature, but it generally requires some condition greater than mere presence. See Whitney v. State, 472 S.W.2d 524 (Tex. Crim. App. 1971). Most cases characterize residence as a person's place of abode and use the terms residence, abode, and dwelling interchangeably. See, e.g., Snyder v. Pitts, 241 S.W.2d 136 (Tex. 1951); Houston Printing Co. v. Tennant, 39 S.W.2d 1089 (Tex. 1931); Whitney v. State, supra; Carlos v. State, 705 S.W.2d 359 (Tex. App. - Beaumont 1986, pet. ref'd); Farmer's Mut. Protective Ass'n of Texas v. Wright, 702 S.W.2d 295, 297 (Tex. App. - Eastland 1985, no writ). These authorities suggest that subsection 3(a) of section 496.054 requires a measurement far more precise than simply the county the inmate calls home.

More important, "residence" takes its meaning in light of the object or purpose of the law in which it is employed. Switzerland General Ins. Co. v. Gulf Ins. Co., 213 S.W.2d 161 (Tex. Civ. App. - Dallas 1948, writ dism'd). Section

---

(Footnote Continued)
or some other public source. On the other hand, it may only mean that the pardons and paroles division inquire of the inmate where he considers his residence to be or where he intends to reside following release from custody. In light of the purposes of the work program, it would also be appropriate to consider the residence of the inmate's family where the inmate is under an obligation to provide support to the family.

2. An inmate of a penal institution does not, while an inmate, acquire residence at the place where the institution is located. Elec. Code § 1.015(e).

496.051 of the Government Code provides an inventory of the objectives of the work program plan:

> The board of pardons and paroles division of the Texas Department of Criminal Justice is hereby authorized to grant work program privileges, under the 'Work Program Plan,' as hereinafter provided, which shall include programs and procedures for eligible persons in the custody of the institutional division of the Texas Department of Criminal Justice <u>to contribute to court-ordered restitution, payment of court costs, support for the person's family and dependents, savings for the person's release, and the expenses of the person's room, board, and maintenance</u>, under such rules, regulations, and conditions as provided by this Act. (Emphasis added.)

Four objectives of the work program plan relate to the inmate's preexisting obligations to reimburse the state and victims of his crimes and to support his family. The fifth relates to the inmate's preparation for his return to society.

We see no reason why the state's interests in recovering court costs, restitution, and expenses would require placing an eligible inmate in a work facility that is within 100 miles from the inmate's recorded place of residence. The 100-mile radius of subsection 3(a) therefore must pertain specifically to the goals of providing support to the inmate's family or dependents and easing the inmate's return to society. We think a narrow, precise construction of the phrase "recorded place of residence" -- <u>i.e.</u>, one that defines residence as a person's place of abode, dwelling, or habitation -- would be more in keeping with these goals.

As for the consequences of the pardons and paroles division's construction of "recorded place of residence," it might be argued that inconvenience to the inmate and families resulting from the agency's application of the statute are minimal in the case of Red River County when compared to the ensuing administrative convenience. While that may be true in this instance, it is not difficult to envision a situation where this interpretation results in extreme hardship for those who were intended to benefit from the 100-mile radius limitation of subsection 3(a). For example, if a secure work facility were to be constructed in

southern Ector County, its eligible inmate population could include inmates from as far away as Presidio and the Big Bend area, a distance of nearly 200 miles. This variation is inconsistent with the goals of supporting family and dependents and easing the inmate's transition to freedom.

An accepted principle of statutory construction is that the construction placed upon a statute by the agency charged with its administration is entitled to great weight, Ex parte Roloff, 510 S.W.2d 913 (Tex. 1974); State v. Arkansas Dock and Channel Co., 365 S.W.2d 220 (Tex. Civ. App. - San Antonio 1963, writ ref'd), especially where contemporaneous, or nearly so, with the statute itself. Burroughs v. Lyles, 181 S.W.2d 570 (Tex. 1944); Stanford v. Butler, 181 S.W.2d 269 (Tex. 1944); Attorney General Opinion JM-1142 (1990), at 25. On the other hand, the courts will not respect an agency's interpretation of a statute that is contrary to the clear meaning of an unambiguous statute. Texas Health Facilities Comm'n v. El Paso Medical, 573 S.W.2d 291 (Tex. Civ. App. - Tyler 1978, writ ref'd n.r.e.); 2 Tex. Jur. 3d, Administrative Law § 7. Furthermore, the courts will not adhere to the construction of a statute by an administrative agency where such construction is clearly erroneous or inconsistent with the enabling statute. State v. United Bonding Ins. Co., 450 S.W.2d 689 (Tex. Civ. App. - Austin 1970, no writ).

The legislative history of the work program provisions, the judicial construction of the term "residence," and the consequences of the pardons and paroles division's construction of subsection 3(a) of section 496.054 persuade us that its construction of the statute is not consistent with the goals of the work program plan. An eligible person's residence for purposes of the program is, in our opinion, the person's actual place of abode, dwelling, or habitation. Accordingly, a person in the custody of the pardons and paroles division may not be relocated to a "designated work facility" under subsection 3(a) if the facility is more than 100 miles from the actual abode, dwelling, or habitation.

## S U M M A R Y

An eligible person's "recorded place of residence" for the purposes of subsection 3(a) of section 496.054 of the Government Code is the person's actual place of abode, dwelling, or habitation. A person may not be placed in a "designated work facility" pursuant to subsection 3(a) if the facility is

more than 100  miles from  the actual  abode, dwelling, or habitation.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Steve Aragon
Assistant Attorney General